No. 72,315

STATE OF KANSAS, *Appellant,* v. BARBARA GULLEDGE, *Appellee.*

(896 P.2d 378)

Opinion filed June 2, 1995.

*Joe Shepack,* county attorney, argued the cause, and *Robert T. Stephan* attorney general, was with him on the brief for appellant.

*Reid T. Nelson,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellee.

*Brian Cox,* Legal Services Bureau, was on the brief for *amicus curiae* Kansas Department of Revenue.

The opinion of the court was delivered by

HOLMES, C.J.: The State of Kansas appeals from an order of the district court dismissing a complaint against Barbara Gulledge a/k/a Barbara Jones for possession of marijuana in violation of K.S.A. 1993 Supp. 65-4127b and possession of marijuana without a tax stamp in violation of K.S.A. 79-5201 *et seq.* Based on *Montana Dept. of Rev. v. Kurth Ranch,* 511 U.S. ___, 128 L. Ed. 2d 767, 114 S. Ct. 1937 (1994), the district court found further prosecution of the complaint would constitute double jeopardy because a drug

tax had already been assessed and partially satisfied. This court has jurisdiction pursuant to K.S.A. 1994 Supp. 22-3602(b)(1) (appeal to Supreme Court from order dismissing complaint).

For the purposes of this appeal, the parties have stipulated to the following facts:

"1) That Barbara Gulledge was charged in the District Court of Ellsworth County, Kansas, on the 13th day of September, 1993, with the misdemeanor crime of possession of marihuana and the felony crime of possession of marihuana without a tax stamp affixed thereto, in violation of K.S.A. 65-4127b and K.S.A. 79-5201, *et seq.*, respectively.

"2) That these charges were still pending against the Defendant as of July 7, 1994.

"3) That subsequent to the filing of the aforesaid formal charges against the Defendant, the Kansas Department of Revenue did assess and levy a drug tax against the Defendant Barbara Gulledge. The basis for this assessment and levy was the quantity of marihuana, allegedly possessed by Gulledge which gave rise to the criminal charges in Ellsworth County District Court against Barbara Gulledge.

"4) That the officers arresting Gulledge seized from her person as of the date of the arrest the sum of $428.00. This said amount of money was delivered to the Kansas Department of Revenue prior to July 7, 1994, as per a drug tax warrant served upon Ellsworth County Law Enforcement officers by Kansas Department of Revenue Agent Bruce Stout.

"5) That the Kansas Department of Revenue did serve upon the Defendant Gulledge a copy of the drug tax warrant prior to July 7, 1994.

"6) That the seizure of the $428.00 by the Kansas Department of Revenue is final and, otherwise, non-appealable."

The docketing statement filed by the State asserts that the drug tax assessed against the defendant "was satisfied in full." The defendant filed a pretrial motion seeking dismissal of the criminal charges on the grounds that further prosecution after assessment and payment of the drug tax constituted double jeopardy under the United States and Kansas Constitutions. Following argument, the trial court granted the motion based upon the holding of the Supreme Court in *Kurth Ranch*.

The issue now before us may be stated as: Does assessment and payment of amounts allegedly owed under the Kansas Drug Tax Act constitute a criminal punishment for double jeopardy purposes

under the holding in *Montana Dept. of Rev. v. Kurth Ranch,* 511 U.S. ___, 128 L. Ed. 2d 767?

Before turning to the Supreme Court's decision in *Kurth Ranch* and the position of the parties to this appeal, the relevant provisions of the Kansas Drug Tax Act and our decisions interpreting the act will be briefly reviewed.

The statutes imposing a tax on marijuana and controlled substances, commonly referred to as the Kansas Drug Tax Act (Act), were first adopted in 1987 and are codified at K.S.A. 79-5201 *et seq.* "Marijuana" is defined by reference to the appropriate subsections of K.S.A. 65-4101 and is included within the Act if possessed in violation of Kansas law. K.S.A. 1993 Supp. 79-5201(a). A "dealer" is any person who unlawfully acquires or possesses more than 28 grams of marijuana. K.S.A. 1993 Supp. 79-5201(c). K.S.A. 1993 Supp. 79-5202 imposes a tax on marijuana and other controlled substances and bases the rate of taxation on the weight of the substance in a dealer's possession. Marijuana is taxed at \$3.50 per gram. K.S.A. 79-5203 provides for administration of the tax by the Director of Taxation and requires certain forms to be filled out at the time of payment of the tax.

K.S.A. 1993 Supp. 79-5204(a) prohibits a dealer from possessing marijuana unless the tax has been paid. Official stamps or labels are to be purchased from the Director of Taxation and affixed to the marijuana as evidence of payment. Each stamp is valid for three months after issuance. Any person may purchase the stamps without disclosing his or her identity. K.S.A. 1993 Supp. 79-5204(b). The tax is due immediately upon acquisition or possession of marijuana in the state. K.S.A. 1993 Supp. 79-5204(d). K.S.A. 1993 Supp. 79-5205(a), applicable here, allows the Director to assess the tax immediately upon learning it has not been paid. If payment is not immediately made after notifying the dealer of the tax, penalty and interest due, the Director may collect the amount due as provided in the income tax statutes. The taxpayer has 15 days to request a hearing regarding the assessment. K.S.A. 1993 Supp. 79-5205(b). Information obtained in compliance with the Act is confidential and may not be used against the dealer in any criminal

proceeding except proceedings involving taxes due under the Act. K.S.A. 79-5206.

K.S.A. 79-5208 establishes criminal and civil penalties. A dealer violating the Act is subject to a civil penalty of 100 percent of the tax in addition to payment of the tax itself. The Act makes distributing or possessing marijuana without affixing the appropriate stamps a crime, and upon conviction, the dealer may be sentenced to not more than five years imprisonment and/or payment of a fine not exceeding $10,000. The statute was amended in 1994 to provide that the crime is a severity level 10 felony. See K.S.A. 1994 Supp. 79-5208. The Act does not give a dealer immunity from criminal prosecution. K.S.A. 79-5209. Those legally possessing the drug, such as doctors, pharmacists, or hospitals, are exempted. K.S.A. 79-5210.

Although the instant case does not involve the constitutionality of the Act itself, three Kansas cases which have considered various constitutional attacks on the Act are instructive. The first case to consider the constitutional validity of the Act was *State v. Durrant*, 244 Kan. 522, 769 P.2d 1174, *cert. denied* 492 U.S. 923 (1989). In *Durrant*, the court held the Act does not violate the Fifth Amendment privilege against self-incrimination because all information obtained through compliance with the Act is confidential and may not be used as evidence in the prosecution for any crimes, other than enforcement of the Act itself. 244 Kan. at 535.

Next, the Court of Appeals in *State v. Matson*, 14 Kan. App. 2d 632, 798 P.2d 488 (1990), *rev. denied* 249 Kan. 777 (1991), considered a defendant's claim that the drug tax was really a criminal penalty and as such violated his Fourteenth Amendment right to due process. In *Matson*, the court relied heavily on *United States v. Sanchez*, 340 U.S. 42, 95 L. Ed 47, 71 S. Ct. 108 (1950), where the United States Supreme Court upheld a federal statute (now repealed) that taxed the transfer of marijuana to a person who had not paid a special tax and registered. *Sanchez* recognized a tax may be valid even though it regulates, discourages, or deters the activity taxed. This principle applies even though the revenue obtained is negligible or the revenue purpose of the tax is secondary. 340 U.S. at 44.

After reviewing *Sanchez*, the court in *Matson* analyzed the legislative history of the Kansas Drug Tax Act :

"Although the minutes of the Kansas House and Senate Committees show that the primary purpose of the Act was to combat drug usage, raising revenue was a motive that was definitely considered. The committee minutes reflect the following statement by Rep. Robert Miller: 'The taxes would provide a way to tax part of the flourishing underground economy that is normally operating on a tax-free basis.' Hearings on HB-2140 before the House Taxation Committee, 1987 Session. Other testimony before the committee reflects similar goals, including suggestions that the revenue collected be used not only to combat illegal drug usage but also for a program for the prevention, education, and rehabilitation of those adversely affected by the drug trade." 14 Kan. App. 2d at 640.

*Matson* upheld the constitutionality of the statute "[b]ecause revenue collection is one of the objectives of the statute and because imposition of the tax does not expressly depend on the illegal nature of the sale or possession of marijuana." 14 Kan. App. 2d at 640. The brief of *amicus curiae* Kansas Department of Revenue (KDR) states that over one-half million dollars in drug tax was collected in both fiscal year 1993 and fiscal year 1994. This court addressed an identical argument in *State v. Berberich,* 248 Kan. 854, 811 P.2d 1192 (1991). The court quoted heavily from *Matson* and relied on *Sanchez* in concluding the Kansas drug tax does not violate due process and is constitutionally valid. In relying on *Sanchez*, the court stated:

"In *United States v. Sanchez,* 340 U.S. 42, 95 L. Ed. 47, 71 S. Ct. 108 (1950), the United States Supreme Court held that the tax imposed by § 2590(a)(2) of the Internal Revenue Code (now repealed) of $100 per ounce on all transfers of marijuana to any person who has not paid the special tax and registered under §§ 2590 and 2591 of the Code was not invalid, despite the regulatory effect and the close resemblance to a penalty, merely because Congress, in enacting the tax statute, had the objective, in addition to raising revenue, to render extremely difficult the acquisition of the drug by persons who so desire for illicit uses and to develop adequate means of publicizing dealing in the drug in order to tax and control the traffic effectively. The civil character of the tax thus imposed is not altered by its severity in relation to the tax assessed. A tax does not cease to be valid merely because it regulates, discourages, or even definitely deters the activity taxed, even though the revenue obtained is obviously negligible or the revenue purpose of the tax is secondary. Even though the transferor becomes liable for a tax imposed upon the transfer of marijuana if the transferee fails to pay, the tax is a civil rather than a criminal sanction where the transfer is not made unlawful

by the taxing statute, particularly where it provides a civil procedure for collection, thus indicating an intention of Congress that the tax be treated as such, and the Government seeks to collect the levy by a judicial proceeding with its attendant safeguards." 248 Kan. at 866.

As indicated earlier, the defendant does not assert that the Act is unconstitutional on its face but contends that assessment and collection of the tax constitutes punishment which precludes, as a violation of the Double Jeopardy Clause, her criminal prosecution. The Kansas appellate courts have not specifically addressed whether assessment of the drug tax constitutes punishment for purposes of the Double Jeopardy Clause. The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This clause is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969).

In *State v. Cady*, 254 Kan. 393, 867 P.2d 270 (1994), we described the effect and application of the Double Jeopardy Clause as follows:

"The Double Jeopardy Clause of the United States Constitution protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 53 L. Ed. 2d 187, 97 S. Ct. 2221 (1977). The language of § 10 of the Kansas Constitution Bill of Rights is very similar to the language contained in the Fifth Amendment to the United States Constitution. Both provide in effect that no person shall be twice placed in jeopardy for the same offense. The language of the Fifth Amendment guarantees no greater protection to an accused than does § 10 of the Kansas Constitution Bill of Rights. Therefore, the underlying protection contained in the Double Jeopardy Clause of the United States Constitution is contained in § 10 of the Kansas Constitution Bill of Rights." 254 Kan. at 396-97.

We now turn to the issue before us. Did the assessment and collection of the Kansas drug tax constitute a criminal punishment which bars any further prosecution of the defendant as a violation of the Double Jeopardy Clause? The trial court held that it did, basing its determination on the decision in *Kurth Ranch.*

The United States Supreme Court in *Kurth Ranch* held that a tax on the possession of illegal drugs assessed after the State had

imposed a criminal penalty for the same conduct constituted a second punishment in violation of the Double Jeopardy Clause. *Kurth Ranch* considered the effect and application of the Montana Dangerous Drug Tax Act, which imposed a tax on the "possession and storage of dangerous drugs." The taxpayer was required to file a return within 72 hours of arrest. There was no obligation to file a return or pay any tax unless and until a taxpayer was arrested. The tax was to be collected only after any state or federal fines or forfeitures had been satisfied. The tax rate was either 10 percent of the drug's assessed market value or a specified amount per ounce ($100 per ounce for marijuana), whichever was greater. Tax proceeds were to be allocated between substance abuse programs and enforcement of drug laws. 128 L. Ed. 2d at 773-74.

Under the facts of *Kurth Ranch*, a Montana district court convicted and sentenced six members of the Kurth family for drug crimes arising out of their operation of a marijuana farm. In a separate proceeding, the Montana Department of Revenue attempted to collect a tax on the marijuana. The defendants challenged the constitutionality of the assessment, and the lower courts found the assessment invalid under the Double Jeopardy Clause. In determining whether the assessment was subject to the constraints of the Double Jeopardy Clause, the United States Supreme Court analyzed whether the tax should be characterized as a punishment.

Initially, the Court recognized that while the unlawfulness of an activity does not prevent its taxation, " 'there comes a time . . . [when a] so-called tax . . . loses its character as such and becomes a mere penalty with the characteristics of regulation and punishment.' " 128 L. Ed. 2d at 778 (quoting *Magnamo Co. v. Hamilton*, 292 U.S. 40, 44, 78 L. Ed. 1109, 54 S. Ct. 599 [1934]). Next, the Court noted that "neither a high rate of taxation nor an obvious deterrent purpose automatically marks this tax a form of punishment," although those factors were consistent with a characterization of the tax as punishment. 128 L. Ed. 2d at 779. The Court found the Montana tax was remarkably high, as a significant part of the assessment was more than eight times the drug's market value. Additionally, the Court found the deterrent purpose of the

tax was beyond question. However, the Court then focused on two "unusual features" of the Montana tax which set it apart from most taxes and which the Court relied upon in holding the tax violated the Double Jeopardy Clause.

First, the tax was conditioned upon the commission of a crime. The Court recognized that in *Sanchez* it had "relied on the absence of such a condition to support its conclusion that a particular federal tax was a civil rather than a criminal sanction." 128 L. Ed. 2d at 780. The Court described the Montana tax:

"[T]he tax assessment not only hinges on the commission of a crime, it also is exacted only after the taxpayer has been arrested for the precise conduct that gives rise to the tax obligation in the first place. Persons who have been arrested for possessing marijuana constitute the entire class of taxpayers subject to the Montana tax." 128 L. Ed. 2d at 780.

The Court explained that taxes imposed on illegal activities are different from taxes with pure revenue raising purposes or mixed-motive taxes which are intended to deter an activity and raise money. The justifications for mixed-motive taxes do not apply to taxes based solely on illegal activity because revenue could as easily be raised by increasing the fine imposed upon conviction. 128 L. Ed. 2d at 780.

The second unusual feature of the Montana tax was that, although it was purportedly a property tax on "the possession and storage of dangerous drugs," it was levied on goods the taxpayer neither owned nor possessed when imposed. 128 L. Ed. 2d at 781. Because the tax was not assessed until and unless a taxpayer was arrested, the drugs presumably were already destroyed or no longer possessed by the taxpayer when the tax was imposed. The Court found this kind of tax "imposed on criminals and no others" departed so far from normal revenue laws as to become a form of punishment. 128 L. Ed. 2d at 781. The Court concluded: "Taken as a whole, this drug tax is a concoction of anomalies, too far removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." 128 L. Ed. 2d at 781.

Because the tax was a punishment and imposed in a separate proceeding, the Court held it placed the defendants in double jeop-

ardy. The Court concluded the tax must be imposed during the first prosecution or not at all. 128 L. Ed. 2d at 781-82. It stated: "Montana no doubt could collect its tax on the possession of marijuana, for example, if it had not previously punished the taxpayer for the same offense, or, indeed, if it had assessed the tax in the same proceeding that resulted in his conviction." 128 L. Ed. 2d at 778. The Court, however, reserved the question "whether an ostensibly civil proceeding that is designed to inflict punishment may bar a subsequent proceeding that is admittedly criminal in character." 128 L. Ed. 2d at 780 n.21. Likewise, in view of the result hereinafter reached, we do not need to consider that question. For a critical analysis of *Kurth Ranch*, see *The Supreme Court—Leading Cases*, 108 Harv. L. Rev. 139, 171 (1994).

The question for this court is whether the Kansas drug tax has such punitive characteristics that it is subjected to the constraints of the Double Jeopardy Clause. Like the Montana tax, the Kansas tax has a primarily deterrent purpose and the Kansas tax rate of approximately $100 per ounce is comparable to the Montana rate, which was more than eight times the market value of a significant portion of the drugs. 128 L. Ed. 2d at 779 n.17. It should also be noted that the tax upheld in *Sanchez* was $100 per ounce. Additionally, as *amicus curiae* points out, there is no evidence in this case regarding the relationship of the assessment to the market value of the marijuana or any other benchmark. The market value can vary depending on a number of factors, such as quality, supply and demand, and volume sold. In *Kurth Ranch*, Chief Justice Rehnquist notes in his dissent that the majority focuses on the value of the low-grade "shake" and "glosses over" the fact that the tax imposed on the higher-quality "bud" amounted to only 80 percent of its market value. 128 L. Ed. 2d at 785-86. In the present case there is simply no evidence on this point. The defendant also argues the tax rate is high because the tax stamps are valid for only three months. Presumably, the short life span of the tax stamps reflects the legislature's recognition of the rapid turnover rate of illicit drugs. Nevertheless, assuming that the rate is high, the facts of "a high tax rate and deterrent purpose . . ., in and of them-

selves, do not necessarily render the tax punitive." 128 L. Ed. 2d at 779.

In *Kurth Ranch*, the Court, in finding a double jeopardy violation, relied upon certain unusual features of the Montana drug tax statutes which set them apart from most tax statutes. Absent these unusual features the Court, apparently, would not have found the Montana tax violated the Double Jeopardy Clause.

The initial "unusual feature" of the Montana tax was that it was conditioned on the commission of a crime. Although the Kansas drug tax applies only to those who unlawfully possess more than minimum quantities of marijuana or other controlled substances, unlike the Montana tax, assessment of the Kansas tax does not directly rest on criminal conduct. First, the tax does not apply to everyone who illegally possesses drugs. It only applies to those possessing illegal drugs in larger quantities in response to legislative concern that this flourishing underground economy not operate on a tax-free basis. In *Matson*, the defendant contended the Kansas tax was "in reality a criminal penalty, and as such . . . an unconstitutional denial of due process under the Fourteenth Amendment." 14 Kan. App. 2d at 637. After recognizing that the primary purpose of the tax was to combat drug usage, the court went on to hold: "Because revenue collection is one of the objectives of the statute and because imposition of the tax does not expressly depend on the illegal nature of the sale or possession of marijuana, we hold that the statute is constitutionally valid under the United States Constitution." 14 Kan. App. 2d at 640.

In *Berberich*, the defendant requested that we overrule the holding in *Matson*, making the same argument that the tax constituted a criminal penalty. We declined to do so. 248 Kan. at 863-68.

The Montana tax, on the other hand, was not only expressly dependent upon the commission of a crime and the illegal nature of the drugs, it did not even give rise to taxation until "after the taxpayer has been arrested for the precise conduct that gives rise to the tax obligation in the first place. Persons who have been arrested for possessing marijuana constitute the entire class of taxpayers subject to the Montana tax." 128 L. Ed. 2d at 780. The

Kansas tax is levied on the possession of drugs regardless of whether the taxpayer has been arrested for criminal conduct. The tax is due immediately upon acquisition or possession of marijuana in the state; criminal prosecution is not required. Significantly, the taxpayer is not required to expose his or her identity to comply with the tax, and any information obtained through compliance with the Act is confidential and cannot be used against the taxpayer in a criminal proceeding other than enforcement of the Act itself. Nor are law enforcement officers required to report drug arrests to KDR. The Director of Taxation assesses the tax based on personal knowledge or information available.

The second "unusual feature" of the Montana tax, relied upon by the Court, was that it was a property tax on confiscated goods which was only levied on the taxpayer after the taxpayer no longer owned or possessed the drugs. The Court explained:

"The Montana tax is exceptional for an additional reason. Although it purports to be a species of property tax—that is, a 'tax on the possession and storage of dangerous drugs,' Mont. Code Ann § 15-25-111 (1987)—it is levied on goods that the taxpayer neither owns nor possesses when the tax is imposed. Indeed, the State presumably *destroyed* the contraband goods in this case before the tax on them was assessed. . . . A tax on 'possession' of goods that no longer exist and that the taxpayer never lawfully possessed has an unmistakable punitive character. This tax, imposed on criminals and no others, departs so far from normal revenue laws as to become a form of punishment." 128 L. Ed. 2d at 780-81.

The Kansas tax is due and owing upon acquisition or possession of a specified amount of unlawful drugs in the state and is intended to be assessed when the taxpayer is in possession of the property.

The Court of Appeals in *Matson,* and this court in *Berberich,* determined that the Kansas drug tax did not impose a criminal penalty on the taxpayer/criminal defendants. The issue on appeal in the present case is whether the recent decision in *Kurth Ranch* requires a different result. The defendant, of course, asserts that it does, while the State takes the position that the narrow holding in *Kurth Ranch,* based upon "unusual features" of the Montana tax not present in our statutes, does not require a finding that the Kansas tax constitutes a criminal penalty for double jeopardy purposes.

In response to *Kurth Ranch*, other jurisdictions have faced similar arguments. In *Milner v. State*, 658 So. 2d 500 (Ala. Civ. App. 1994), *rev. denied* March 3, 1995, the court summarily concluded that the two unusual features of the Montana tax did not exist in Alabama's drug tax and the holding in *Kurth Ranch* had no application. The drug tax was levied on the possession of drugs, regardless of whether criminal charges were filed against the taxpayer. The second feature was distinguishable because the Alabama tax was an excise tax on the dealer and not a property tax on confiscated goods. The Alabama tax statutes are similar to the Kansas statutes. Milner had been arrested in August 1992 for possession of marijuana and subsequently pled guilty to the federal criminal charges in September 1993. In December 1992 the Alabama Department of Revenue executed a final jeopardy tax assessment against Milner in excess of $31,000 for failure to purchase and affix drug stamps to the same marijuana that was the basis of the federal criminal charges. The Alabama court reviewed two earlier cases, *Hyatt v. State Dept. of Revenue*, 597 So. 2d 716 (Ala. Civ. App. 1992), and *Briney v. State Dept. of Revenue*, 594 So. 2d 120 (Ala. Civ. App. 1991), which had upheld the tax against double jeopardy arguments, and went on to state:

"Milner suggests that we revisit Hyatt and Briney due to a recent decision of the Supreme Court. *Dep't. of Revenue of Montana v. Kurth Ranch*, 511 U.S. ——, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994).

"In *Kurth Ranch* the Supreme Court held that Montana's drug tax statute constituted a second punishment for double jeopardy purposes and was therefore unconstitutional. In reaching that decision, the Supreme Court focused on two unusual features of the Montana tax statute.

"The first feature which concerned the Court was that the tax was conditioned on the commission of a crime. The tax was levied only on individuals arrested for possession of drugs. The second feature which concerned the Court was that the tax was assessed on confiscated goods. The Court's concern was that the tax was imposed on property that had been confiscated and was no longer in the taxpayer's possession.

"Alabama's drug tax is distinguishable from Montana's drug tax. The two features of the Montana tax that the Supreme Court was interested in do not exist in Alabama's drug tax. In Alabama the drug tax is levied on the possession of drugs, regardless of whether there is a criminal charge against the taxpayer. No

criminal prosecution is required. [Citations omitted.] Furthermore, Alabama's tax is an excise tax on the dealer and not a property tax on confiscated goods.

"Due to these distinctions, we find that the holding in *Kurth Ranch* has no application to Alabama's drug tax. Concerning the double jeopardy issue, we stand on our prior holdings in Hyatt and Briney." 658 So. 2d at 501-02.

In a recent and more thoroughly considered opinion, the Iowa Supreme Court addressed the issue now before us in a nearly identical case. In *State v. Lange,* 531 N.W.2d 108 (Iowa 1995), the defendant was arrested for the manufacture of marijuana after two potted marijuana plants were found in his apartment following a consensual search of the premises. There were no drug tax stamps affixed to either plant. The State filed an information against Lange charging him with manufacture of a controlled substance. Several months later, the State filed a second complaint accusing Lange of failure to affix a drug tax stamp to the marijuana which formed the basis for the first charge.

Lange was found guilty on the charge of manufacturing marijuana prior to any trial on the drug tax stamp charge. At a bench trial the court found Lange guilty of the drug tax stamp charge, but Lange challenged the entry of judgment on his conviction, asserting that as he had paid $1,085 in drug tax assessments prior to trial any subsequent punishment would violate his right against double jeopardy. His challenge was denied, and the court imposed a sentence on the drug tax stamp charge. Lange appealed asserting several issues, including double jeopardy based upon *Kurth Ranch.*

Because of the similarity in the facts, statutes, arguments, and issues in *Lange* and our present case, we quote at length from the Iowa decision. The court stated:

"Lange's third contention is that his sentence on the drug tax stamp conviction constituted double punishment in violation of his right against double jeopardy. For that reason, he believes the district court erred when it imposed a second punishment based on the same offense. Lange bases the double punishment contention on the fact that before his sentence on the drug tax stamp conviction, he had been assessed and had paid $1085 in drug tax stamp assessments. These assessments were on the drugs that formed the basis for the drug tax stamp charge and conviction. Lange made this same contention and cited the assessment to the sentencing judge. In support of his contention, Lange cited *In re Kurth Ranch,* 986 F.2d 1308 (9th Cir. 1993).

"*In re Kurth Ranch* has since reached the United States Supreme Court. *See Montana Dep't of Revenue v. Kurth Ranch,* 511 U.S. _____, 114 S. Ct. 1937, 128 L. Ed. 2d 767 (1994). In *Montana Department of Revenue v. Kurth Ranch,* the Supreme Court had a Montana statute before it that imposes a tax 'on the possession and storage of dangerous drugs.' *Id.* at _____, 114 S. Ct. at 1941, 128 L. Ed. 2d at 773. This statute expressly provides that the tax is to be 'collected only after any state or federal fines or forfeitures have been satisfied.' *Id.* at _____, 114 S. Ct. at 1941, 128 L. Ed. 2d at 773. The tax is either ten percent of the assessed market value of the drugs or a specified amount depending on the drug ($100 per ounce for marijuana). Under agency rules, taxpayers must file a return within seventy-two hours of their arrest. The taxpayer has no obligation to file a return or to pay any tax unless and until the taxpayer is arrested. The Montana statute presented the Supreme Court with the following question: 'whether a tax on the possession of illegal drugs assessed after the State has imposed a criminal penalty for the same conduct may violate the constitutional prohibition against successive punishments for the same offense.' *Id.* at _____, 114 S. Ct. at 1941, 128 L. Ed. 2d at 772-73. This is the same double jeopardy argument Lange raises with us. *See id.* at _____ n.1, 114 S. Ct. at 1941 n. 1, 128 L. Ed. 2d at 773 n. 1 (Double Jeopardy Clause of Fifth Amendment to federal Constitution protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense). The question turned on 'whether the tax has punitive characteristics that subject it to the constraints of the Double Jeopardy Clause.' *Id.* at _____, 114 S. Ct. at 1945, 128 L. Ed. 2d at 778.

"The Supreme Court began its analysis by 'noting that neither a high rate of taxation nor an obvious deterrent purpose automatically marks this tax as a form of punishment.' *Id.* at _____, 114 S. Ct. at 1946, 128 L. Ed. 2d at 779. Yet, the Court recognized these attributes as consistent with a punitive character. The Court, however, stopped short of saying these attributes in and of themselves render the tax punitive. *Id.* at _____, 114 S. Ct. at 1946-47, 128 L. Ed. 2d at 779-80.

"The Court zeroed in on the two attributes of the Montana statute that did render it punitive and violative of the Double Jeopardy Clause. First, the tax is conditioned on the commission of a crime. The Court saw this condition as 'significant of penal and prohibitory intent rather than the gathering of revenue.' *Id.* at _____, 114 S. Ct. at 1947, 128 L. Ed. 2d at 779-80. Significantly, the Court said:

'In this case, the tax assessment not only hinges on the commission of a crime, it also is exacted only after the taxpayer has been arrested for the precise conduct that gives rise to the tax obligation in the first place. Persons who have been arrested for possessing marijuana constitute the entire class of taxpayers subject to the Montana tax.'

*Id.* at _____, 114 S. Ct. at 1947, 128 L. Ed. 2d at 780.

"Second, while the statute characterized the tax as a property tax — that is a tax on the possession and storage of dangerous drugs — the Court noted that the

tax is actually levied on goods the taxpayer neither owns nor possesses when the tax is imposed. *Id.* at ____, 114 S. Ct. at 1948, 128 L. Ed. 2d at 780-81. On this point, the Court reasoned this way:

'Indeed, the State presumably *destroyed* the contraband goods in this case before the tax on them was assessed. If a statute that amounts to a confiscation of property is unconstitutional, a tax on previously confiscated goods is at least questionable. A tax on "possession" of goods that no longer exist and that the taxpayer never lawfully possessed has an unmistakable punitive character. This tax, imposed on criminals and no others, departs so far from normal revenue laws as to become a form of punishment.

'Taken as a whole, this drug tax is a concoction of anomalies, too far removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of double jeopardy analysis.'

*Id.* at ____, 114 S. Ct. at 1948, 128 L. Ed. 2d at 781 (citations omitted).

"Our drug tax stamp statute had neither characteristic that the Supreme Court found punitive in the Montana statute. Iowa Code section 421A.1(3) imposes the tax on a dealer and makes the tax due and payable immediately upon manufacture, production, acquisition, purchase or possession by a dealer. A 'dealer' is defined as

'any person who ships, transports, or imports into this state or acquires, purchases, possesses, manufactures, or produces in this state any of the following:

'a. Seven or more grams of a taxable substance other than marijuana, but including a taxable substance that is a mixture of marijuana and other taxable substances.

'b. Forty-two and one-half grams or more of a substance consisting of or containing marijuana.

'c. Ten or more dosage units of a taxable substance which is not sold by weight.'

Iowa Code § 421A.1(3). As this statute makes clear, no tax is imposed unless certain threshold limits are reached. For example, in the case of marijuana, no tax is imposed below forty-two and one-half grams. And, in the case of marijuana, the rate of tax above this amount is five dollars for each gram or portion of a gram. Iowa Code § 421A.7. So a person may possess a controlled substance illegally but still not be subject to the tax.

"The Iowa director of revenue and finance has the statutory obligation to assess and collect the tax after the director learns that a drug tax stamp was required but not purchased. *See* Iowa Code § 421A.9. The director collects the tax in the same manner as provided for the collection of delinquent income taxes. *Id.*

"Unlike the Montana tax, the imposition of the Iowa tax is therefore not conditioned on the commission of a crime. Nor is it exacted only after the taxpayer is arrested.

"Moreover, in *State v. Gallup*, 500 N.W.2d 437 (Iowa 1993), we held that the tax under section 421A-7—and an additional penalty for failure to pay the tax

under section 421A.12—did not impose additional punishment for criminal conduct in violation of due process. Rather, we held that such a tax and penalty were a legitimate tax and civil sanction that were not conditioned on commission of a crime. *Id.* at 444-45.

"In *Gallup,* we concluded our drug tax stamp statute was no different than the federal marijuana statute that was upheld in *United States v. Sanchez,* 340 U.S. 42, 71 S. Ct. 108, 95 L. Ed. 47 (1950). *Id.* at 445. ('We see no substantial difference between chapter 421A and the federal marijuana statute that was upheld in *Sanchez.* We view the chapter 421A tax and penalty as civil, rather than as criminal, sanctions and as a proper exercise of the State's taxing power.')

"In *Kurth Ranch,* the Supreme Court relied on *Sanchez* to support its analysis that a tax conditioned on the commission of a crime is a criminal rather than civil sanction. The Court, referring to *Sanchez,* noted that the Court 'has relied on the absence of such a condition to support its conclusion that a particular federal tax was a civil rather than a criminal sanction.' *Kurth Ranch,* 511 U.S. at ____, 114 S. Ct. 1947, 128 L. Ed. 2d at 780. In a footnote to this statement the Court said:

'In *Sanchez* we examined a federal marijuana tax [since repealed] that taxed the transfer of marijuana to a person who has not paid a special tax and registered. Under the statute, the transferor's liability arose when the transferee failed to pay the tax; as a result, "[s]ince his tax liability does not in effect rest on criminal conduct, the tax can be properly called a civil rather than a criminal sanction." 340 U.S. at 45, 715 S. Ct. at 110, 95 L. Ed. at 50.

*Id.* at ____ n.20, 114 S. Ct. at 1947 n.20, 128 L. Ed. 2d at 780 n.20.

"In contrast to the Montana tax, the Iowa drug stamp tax is imposed immediately upon manufacture, production, acquisition, purchase, or possession of the controlled substance. *See* Iowa Code § 421A.3. The Iowa tax, therefore, is not—like the Montana tax—imposed on goods a taxpayer neither owns nor possesses.

"We conclude the Iowa drug stamp tax statute is not a criminal penalty. Because it is not a criminal penalty, the sentence on the drug tax stamp conviction did not constitute a second punishment violative of Lange's right against double jeopardy." 531 N.W.2d at 115-17.

We recognize at least two state courts in other jurisdictions have concluded differently; however, those decisions are currently pending review. We agree with the Iowa court's analysis and reasoning. The Kansas Drug Tax Act is significantly different than the Montana tax Act considered in *Kurth Ranch.* The Kansas Act does not contain the "unusual features" upon which the court relied in *Kurth Ranch,* and we conclude that the Kansas drug tax does not impose a criminal penalty for double jeopardy purposes. We adhere to the earlier decisions in *Matson* and *Berberich.* The trial

court erred in finding further prosecution of the complaint against the defendant would subject her to double jeopardy.

The judgment is reversed, and the case is remanded to the district court for further proceedings.