**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 2 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

HOWARD SCOTT SIMPSON,

     Petitioner-Appellant,

v.

EDWARD E. BOUKER, Judge, District
Court of Ellis County; THOMAS J.
DREES\*, County Attorney of Ellis
County; CARLA STOVALL, Kansas
Attorney General,

     Respondents-Appellees.

No. 00-3101

---

ROY L. JENSEN,

     Petitioner-Appellant,

v.

EDWARD E. BOUKER, District Court
Judge of Ellis County; THOMAS J.
DREES, County Attorney of Ellis County,
Kansas; ATTORNEY GENERAL OF
THE STATE OF KANSAS,

     Respondents-Appellees.

No. 00-3107

---

\* Pursuant to Fed. R. App. P. 43(c)(2), Thomas J. Drees is substituted for Glenn R.
Braun, Ellis County Attorney, as a respondent in this action.

JOHN G. HALLOCK,

        Petitioner-Appellant,

v.

BYRON MEEKS, Pawnee County
District Court Judge; JOHN M. SETTLE,
County Attorney of Pawnee County,
Kansas; ATTORNEY GENERAL OF
KANSAS,

        Respondents-Appellees.

No. 00-3133

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. Nos. 97-CV-3011-DES, 97-CV-3032-DES, & 97-3013-DES)

Michael S. Holland of Holland and Holland, Russell, Kansas, for Petitioners-Appellants.

David L. Harder, Kansas Department of Revenue (Jared S. Maag, Assistant Attorney General, with him on the brief), Topeka, Kansas, for Respondents-Appellees.

Before **EBEL**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

**BALDOCK**, Circuit Judge.

      Petitioners Howard Scott Simpson, Roy L. Jensen, and John G. Hallock appeal the district court's order denying their petitions for a writ of habeas corpus. See 28 U.S.C. § 2254. Petitioners argue their prosecutions for possession of marijuana, following the State of Kansas' imposition of a penalty for failure to pay a drug tax pursuant to Kan.

2

Stat. Ann. §§ 79-5201 thru 79-5212, violate the Double Jeopardy Clause of the Fifth Amendment. <u>See</u> U.S. Const. amend. V. We exercise jurisdiction pursuant to 28 U.S.C. § 2253(a), and affirm.

## I.

The Kansas Drug Tax Act (Act) imposes a tax on marijuana and other controlled substances. The Act bases the rate of taxation on the weight of the substance in a dealer's possession. Under the Act, the tax rate for marijuana is $3.50 per gram. Kan. Stat. Ann. § 79-5202(a)(1). The Secretary of Revenue adopts rules and regulations relating to the administration of the Act and the Director of Taxation administers the tax itself. <u>Id.</u>

The Act applies only to "dealers" defined as "any person who, in violation of Kansas law, manufactures, produces, ships, transports, or imports into Kansas or in any manner acquires or possesses more than 28 grams of marijuana . . . ." <u>Id.</u> § 79-5201(c). The Director of Taxation sells official stamps which purchaser's affix to the marijuana as evidence of payment. <u>Id.</u> § 79-5204(b). Each stamp is valid for three months after issuance. <u>Id.</u> Any person may purchase the stamps without disclosing his or her identity. <u>Id.</u> The tax is due immediately upon acquisition or possession of the requisite amount of marijuana within the State. <u>Id.</u> § 79-5204(d).

Upon learning the tax is unpaid, the Director may assess the tax. <u>Id.</u> § 79-5205(a). If the tax remains unpaid after notification of the amount of tax, penalty and interest due, the Director may collect the amount due as provided in the income tax statutes. <u>Id.</u>

Information obtained in compliance with the Act is confidential and may not be used against the dealer in any criminal proceeding except proceedings involving taxes due. Id. § 79-5206.

Both criminal and civil penalties are available for violation of the Act. Id. § 79-5208. A dealer violating the Act is subject to a civil penalty of 100% of the tax in addition to payment of the tax itself. Id. The Act also makes distributing or possessing marijuana without affixing the appropriate stamps a level ten felony. Id. The Act does not give a dealer immunity from criminal prosecution. Id. § 79-5209.

## II.

### A. Petitioner Jensen

On June 23, 1993, pursuant to a search warrant, state law enforcement officers searched Petitioner Jensen's home and seized a quantity of marijuana. On July 9, 1993, the Kansas Department of Revenue (KDR) assessed a tax upon the marijuana seized in the amount of $9,975.00. The KDR also assessed a 100% penalty for failure to pay the drug tax bringing the total due to $19,950.00.

On July 20, 1993, the Ellis County Attorney filed a complaint charging Petitioner Jensen with (1) possession of marijuana with intent to sell within 1000 feet of school property in violation of Kan. Stat. Ann. § 65-4127b(b)(3) (re-codified at Kan. Stat. Ann. § 65-4163(a)(3) (1999 Supp.)) and (2) possession of marijuana without affixing the appropriate tax stamps in violation of Kan. Stat. Ann. § 79-5208. The state district court

4

dismissed the possession with intent to sell charge on double jeopardy grounds. Based upon stipulated facts, Petitioner Jensen was found guilty of possession of marijuana without affixing the appropriate tax stamps. Petitioner Jensen received a stay of his sentence pending the State's appeal of the dismissal of the possession with intent to sell charge.

B. Petitioner Simpson

On May 2, 1994, a police officer stopped Petitioner Simpson for operating a vehicle with an expired license tag. During the stop, the officer looked through the window of the vehicle and saw a large bag full of marijuana. The officer arrested and charged Petitioner Simpson with (1) possession of marijuana without affixing the appropriate tax stamps in violation of Kan. Stat. Ann. § 79-5208, (2) possession of marijuana with intent to sell in violation of Kan. Stat. Ann. § 65-4127b(b)(3) (re-codified at Kan. Stat. Ann. § 65-6142(a)(3) (1999 Supp.)), and (3) driving an unregistered vehicle in violation of Kan. Stat. Ann. § 8-142. On May 16, 1994, the KDR assessed a tax upon the marijuana seized in the amount of $7,840.00. The KDR also assessed a 100% penalty for failure to pay the drug tax, bringing the total amount due to $15,680.00. The state district court again dismissed the possession with intent to sell charge on double jeopardy grounds. Petitioner Simpson pled guilty to driving an unregistered vehicle. The State appealed the district court's dismissal of the possession with intent to sell charge.

C. Petitioner Hallock

In July 1994, police arrested and charged Petitioner Hallock with (1) possession of marijuana with intent to sell within 1000 feet of a school in violation of Kan. Stat. Ann. 1994 Supp. § 65-4163(a)(3), (b) and (2) possession of marijuana without affixing the appropriate tax stamps in violation of Kan. Stat. Ann. § 79-5208. On July 29, 1994, the KDR assessed a tax on the marijuana seized in the amount of $29,810.00. The KDR also assessed a 100% penalty resulting in a total due of $59,620.00. This time, the state district court denied Petitioner Hallock's motion to dismiss based on double jeopardy grounds. Petitioner Hallock did not appeal the district court's denial of the motion to dismiss.

D.

The Kansas Supreme Court consolidated the Simpson and Jensen appeals, held that the district court erred in dismissing the possession of marijuana charges as a violation of the Double Jeopardy Clause, and remanded the cases with instructions to reinstate the possession charges as to each Petitioner. See State v. Jensen, 915 P.2d 109 (Kan. 1996). On remand, Petitioner Jensen was found guilty of possession of marijuana with intent to sell within 1000 feet of school property. After sentencing, Petitioner Jensen obtained a stay until he exhausted his federal habeas remedies. Petitioners Simpson and Hallock each received a stay of criminal prosecution until federal court review of the

double jeopardy issue was completed.[1]

Each Petitioner filed an application for habeas relief pursuant to 28 U.S.C. § 2254, alleging violations of their Fifth Amendment right against double jeopardy. The district court denied each Petitioner's application for habeas relief and issued each Petitioner a certificate of appealability. See id. § 2253(c).

### III.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), applies to this appeal. See Williams v. Taylor, 529 U.S. 362, 402 (2000). Under AEDPA, if a state court adjudicates a claim on the merits, a petitioner is entitled to federal habeas relief only if he can establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1), (2). A state court decision is

---

[1]    Petitioner Hallock did not seek review from the Kansas appellate courts, proceeding instead directly to the United States District Court. Respondents argue that Petitioner failed to exhaust his available state court remedies and, therefore, his appeal must be dismissed. AEDPA amended the exhaustion provisions of § 2254. While § 2254(b)(1) retains the pre-AEDPA requirement that a petition for a writ of habeas corpus may not be granted unless the petitioner has exhausted available state court remedies, § 2254(b)(2) specifically provides that a claim may be denied on the merits notwithstanding a failure to exhaust. See Goodwin v. Oklahoma, 923 F.2d 156, 158 (10th Cir. 1991) (recognizing exception to the exhaustion doctrine where "the state's highest court has explicitly and recently addressed the precise issue advanced by the petitioner"). The Kansas Supreme Court already decided the double jeopardy issue presented in this case in both State v. Gulledge, 896 P.2d 378 (1995) and State v. Jensen, 915 P.2d 109 (1996). As such, we will consider Petitioner Hallock's petition on the merits.

"contrary to" established Supreme Court precedent if the state court (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams, 529 U.S. at 405. A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court identifies the correct governing legal principle from Supreme Court decisions but unreasonably applies that principle to the facts of the particular case. Id. at 407.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause affords three distinct protections to a criminal defendant: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple criminal punishments for the same offense. Jones v. Thomas, 491 U.S. 376, 380-81 (1989). Petitioners argue that their prosecutions for possession of marijuana, following the assessment of a tax penalty for failure to pay the drug tax, violate the Double Jeopardy Clause's protection against multiple criminal punishments for the same offense.

A.

The Supreme Court's opinion in Dep't of Revenue of Montana v. Kurth Ranch, 511 U.S. 767 (1994), guides us because it addresses both the Double Jeopardy Clause and

8

drug taxes.  In <u>Kurth Ranch</u>, the Court examined Montana's Dangerous Drug Tax Act and held that the assessment of the drug tax following state criminal proceedings violated the Double Jeopardy Clause.  <u>Id.</u> at 784.  The Court initially stated that "[a]s a general matter, the unlawfulness of an activity does not prevent its taxation."  <u>Id.</u> at 777 (citing <u>United States v. Constantine</u>, 296 U.S. 287, 293 (1935); <u>James v. United States</u>, 366 U.S. 213 (1961)).  The Court noted, however, that "there comes a time in the extension of the penalizing features of the so-called tax when it loses its character as such and becomes a mere penalty with the characteristics of regulation and punishment."  <u>Id.</u> at 779 (citing <u>Bailey v. Drexel Furniture Co.</u>, 259 U.S. 20, 38 (1922)).  The Court concluded that the Montana tax of $100 per ounce of marijuana was "remarkably high" and that the Montana legislature intended the tax to deter people from possessing marijuana.  <u>Id.</u> at 781.

Two "unusual features" appeared in the Montana tax that the Court determined set it apart from most taxes and ultimately resulted in the Court holding the tax violated the Double Jeopardy Clause.  First, Montana conditioned the tax on the commission of a crime.  The state assessed the tax only after an arrest for the precise conduct that initiates tax liability.  Therefore, the Court concluded this feature was "significant of penal and prohibitory intent."  <u>Id.</u> at 781.  Second, although the Montana tax was purportedly a property tax on "the possession and storage of dangerous drugs," the Court reasoned the state levied the tax "on goods that the taxpayer neither owns nor possesses when the tax is imposed" because the state presumably confiscated the drugs.  <u>Id.</u> at 783.  The Court

believed these "unusual features" indicative of a punitive character and ultimately concluded that "[t]aken as a whole, this drug tax is a concoction of anomalies too far removed in crucial respects from a standard tax assessment to escape characterization as punishment." Id. at 783.

In Jensen, 915 P.2d at 109, the Kansas Supreme Court reaffirmed its previous decision in Gulledge, 896 P.2d at 378, which applied and distinguished Kurth Ranch. In Gulledge, the court recognized that the Kansas tax, like the Montana tax, has a deterrent purpose and a very high tax rate.[2] 896 P.2d at 924. The court went on to note, however, that unlike the Montana tax that the state conditioned upon the commission of a crime, the Kansas drug tax only applies to those who illegally possess drugs in large enough

_____

[2] The Montana Dangerous Drug Tax Act taxed marijuana at a rate of $100 per ounce. The Kansas drug tax is $3.50 per gram which equates to approximately $100 per ounce. In Kurth Ranch, the Court had an estimated market value available and figured the tax and penalty to total eight times the market value of the marijuana. 511 U.S. at 780. Market value can change, however, depending on such factors as quality, supply and demand, and volume sold. In this case, we have no evidence before us as to the market value of the marijuana seized so we cannot determine the exact tax rate. In any event, although the tax rate may be high, a high rate of tax does not automatically render a tax criminal punishment for purposes of Double Jeopardy. See e.g. United States v. Sanchez, 340 U.S. 42 (1950) (upholding a federal tax (now repealed) of $100 per ounce on transfers of marijuana).

Petitioners also argue that because the tax stamps are only valid for three months, the initial tax rate quadruples over the course of a year. Coupled with the penalty for failure to pay the tax, Petitioners argue the potential tax rate is 64 times the market value of marijuana per year. This argument lacks merit, however, because nothing suggests the legislature intended the tax to be collected more than once. In Gulledge, the Kansas Supreme Court determined that the tax stamps are only valid for three months because "[p]resumably, the short life span of the tax stamps reflects the legislature's recognition of the rapid turnover rate of illicit drugs." 896 P.2d at 923.

10

quantities to meet the definition of a "dealer." Id. Because an individual must qualify as a "dealer" to incur tax liability, Kansas does not tax mere drug possession. Thus, a person can possess lesser quantities of marijuana in violation of Kansas law without incurring tax liability. Persons who have been arrested for possessing marijuana constituted the entire class of taxpayers subject to the tax in Montana. Kurth Ranch, 511 U.S. at 781-82. The Kansas tax, however, is assessed regardless of whether the taxpayer has been arrested for criminal conduct. Gulledge, 896 P.2d at 385.

In addition, unlike the Montana tax where the state did not assess the tax until after the arrest of the taxpayer for drug possession, the Kansas tax is due immediately upon possession of the requisite amount of controlled substance. See Kan. Stat. Ann. § 79-5204. The fact that the tax is essentially self-assessed, and many dealers refuse to pay the tax, does not transform the tax into one assessed only upon criminal prosecution.[3] Therefore, the court determined the Kansas drug tax lacked the "unusual features" which rendered the tax in Kurth Ranch so punitive in nature as to transform it into a criminal punishment. See Gulledge, 896 P.2d at 930.

---

[3] The Court in Kurth Ranch specifically noted that "[p]ersons who have been arrested for possessing marijuana constitute the entire class of taxpayers subject to the Montana tax." 511 U.S. at 782. Here, "dealers" constitute the class of taxpayers subject to the tax, rather than just arrested dealers. In addition, Petitioners submit data from the KDR that states from 1991 through 1996, the Kansas drug tax generated $3,914,096.00. Although the majority of the tax collected was assessed subsequent to an arrest, $15,990.00 was collected independent of an arrest. Therefore, some individuals are paying the tax upon possession without being arrested.

11

Additionally, the Jensen court rejected the argument that the penalty for failure to pay the drug tax was punishment for possession of marijuana. The court explained that

> [T]he [possession] charges which were dismissed as carrying duplicative punishments would not have punished the same offense as the 100% penalty. The 100% penalty is punishment for the offense of failing to pay the drug tax, and the punishment of the dismissed charges would have been for possessing the drug. Because the punishments are not for the same offense, the Double Jeopardy Clause is not implicated.

Jensen, 915 P.2d at 120.

The Kansas Supreme Court's decision in Jensen is not an unreasonable application of Kurth Ranch. The court ultimately distinguished the Act in a well-reasoned opinion after careful examination of the Montana tax and the analysis utilized by the Court in Kurth Ranch. In addition, the petitioners in Kurth Ranch challenged the assessment of the tax subsequent to their criminal convictions. The Supreme Court never decided the question whether the prior assessment of a tax would bar a criminal proceeding. In fact, in Kurth Ranch, the Court specifically noted that the case "did not raise the question whether an ostensibly civil proceeding that is designed to inflict punishment may bar a subsequent proceeding that is admittedly criminal in character." 511 U.S. at 782, n. 21. Accordingly, the Kansas court's decision does not run afoul of established Supreme Court precedent.

B.

Our conclusion that Jensen is not an unreasonable application of Kurth Ranch is

12

reinforced by the Supreme Court's decision in Hudson v. United States, 522 U.S. 93 (1997). Hudson, decided after Jensen, does not affect the ultimate conclusion of the Kansas Supreme Court but does clarify the proper analysis for determining whether a particular sanction violates double jeopardy. Hudson held that the Double Jeopardy Clauses's prohibition against multiple punishments for the same offense "protects only against the imposition of multiple criminal punishments." Hudson, 522 U.S. at 99. The core inquiry, therefore, is whether the penalty is criminal or civil in nature. Hudson articulated a two-part test for determining whether a particular punishment is civil or criminal. First, we must determine whether the legislature "indicated either expressly or impliedly a preference for one label or the other." Id. Second, even if the legislature intended for the tax to be a civil sanction, we must consider whether the statutory scheme is "so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." Id.

In determining whether the Act is indeed a civil penalty, Hudson suggests the factors set forth in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963) as "useful guideposts":

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment, retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

13

Hudson, 522 U.S. at 99. Courts must consider these factors "in relation to the statute on its face," and "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id.

Kansas courts, in interpreting the state legislature's intentions, have repeatedly held the assessment of taxes pursuant to the Act is civil in nature. See State v. Matson, 798 P.2d 488 (Kan. 1990) (holding the Act constituted a civil penalty because one of its objectives was revenue collection and because assessment of the tax did not necessarily depend on the illegal nature of the sale or possession of marijuana); see also State v. Berberich, 811 P.2d 1192 (Kan. 1991) (reaffirming Matson). The legislature quite clearly labeled the applicable statute a tax. See Kan. Stat. Ann. § 79-5201 (entitled "Taxation of marijuana and controlled substances") (emphasis added). In addition, Kan. Stat. Ann. § 79-5203 confers authority upon the Secretary of Revenue to "adopt all rules and regulations necessary to administer and enforce the provisions of this act." See Hudson, 522 U.S. at 103 ("That such authority was conferred upon administrative agencies is prima facie evidence that Congress intended to provide for a civil sanction"). Because the Act purports to be civil on its face, a presumption arises that the statute is civil in nature. Kansas v. Hendricks, 521 U.S. 346, 361 (1997). Petitioners can overcome this presumption only "by the clearest proof that the statutory scheme is so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." Hudson, 522 U.S. at 118.

14

Application of the Kennedy factors fails to achieve the "clearest proof" standard under Hudson to transform the Kansas drug tax into a criminal penalty. First, monetary fines do not constitute an "affirmative disability or restraint." Noriega-Perez v. United States, 179 F.3d 1166, 1172 (9th Cir. 1999). Second, courts have not historically viewed monetary penalties as punishment. Id. Third, the statute does not contain a scienter requirement. The tax is due immediately upon possession of the requisite amount of controlled substance. See Kan. Stat. Ann. § 79-5204. Fourth, the Kansas courts have already determined that the tax does serve a deterrent purpose. The Supreme Court has recognized, however, that a monetary sanction may deter others without being criminal in nature. See Hudson, 522 U.S. at 105 ("[T]he mere presence of this purpose is insufficient to render a sanction criminal."). Fifth, possession of marijuana is a crime and the tax is triggered by the act of possessing the requisite amount of marijuana. The penalty, however, is for failure to pay the tax only and does not relate to the illegal act of possessing the drugs. Sixth, the alternative purpose is raising revenue and a concern that the "flourishing underground economy not operate on a tax-free basis." Gulledge, 896 P.2d at 384-85. Finally, although the penalty for failure to pay the tax might be considered excessive, the Supreme Court emphasizes that "no one factor should be considered controlling." Hudson, 522 U.S. at 494. These factors considered in their entirety convince us that the Kansas drug tax is not criminal punishment for double jeopardy purposes.

## IV.

The reasoning of the Kansas Supreme Court is not contrary to nor an unreasonable application of, established Supreme Court precedent. Accordingly, we AFFIRM the district court.