# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
March 4, 2008  Session

## STATE OF TENNESSEE v. JOHN SHIELDS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 07-00531     Paula Skahan, Judge**

---

**No. W2007-01861-CCA-R9-CD  - Filed October 7, 2008**

---

The appellant, John Shields, was indicted in January 2007 for possession of cocaine with intent to sell, possession of cocaine with intent to deliver, and driving on a suspended license.  In this interlocutory appeal, he argues that the instant criminal prosecution violates double jeopardy protections under both the state and federal constitutions because the State has previously assessed and levied a tax under the Tennessee Taxation of Unauthorized Substances Act for the same cocaine. He asserts that because the tax is punitive in nature, the present prosecution would impose a second punishment for the same offense.  Based upon the record and the parties' briefs, we affirm the trial court's order denying the appellant's motion to dismiss the indictment.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Jeffrey Jones, Bartlett, Tennessee, for the appellant, John Shields.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Chris Scruggs, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## I.  Factual Background

According to his January 30, 2007 indictment, the appellant is alleged to have possessed cocaine with intent to sell, possessed cocaine with intent to deliver, and driven on a suspended license, all purportedly occurring on February 25, 2006.  On March 1, 2006, the Tennessee Department of Revenue ("DOR") sent a Notice of Assessment and Demand for Payment to the appellant, requiring payment of a $750 tax, $37.50 penalty, and $0.62 in interest for his February 25 possession of an untaxed, unauthorized substance.  The Notice states that the assessment was

pursuant to Tennessee Code Annotated section 67-4-2801, Tennessee's tax on unauthorized substances. Subsequently, the DOR sent a Levy Notification to the appellant's employer, requiring that it remit fifty percent of the appellant's paycheck until the tax was satisfied. Following his January 2007 indictment, the appellant filed a Motion to Dismiss for Double Jeopardy Violations, arguing that the tax assessment and garnishment constituted jeopardy and, therefore, his subsequent prosecution violated the protections against double jeopardy granted under both the state and federal constitutions. The trial court denied the motion to dismiss, holding that the Tennessee Taxation of Unauthorized Substances Act is not punitive and does not trigger double jeopardy protection.

## II. Analysis

The appellant contends that his criminal prosecution for possession of cocaine on February 25, 2006, places him in double jeopardy in violation of the United States and Tennessee Constitutions because his wages have already been seized by the DOR under the Tennessee Taxation of Unauthorized Substances Act. In this regard, he asserts that the drug tax is actually a fine or penalty upon illegal activity rather than a purely revenue-raising measure. The State maintains that the drug tax is not a penalty and, therefore, the appellant's subsequent criminal prosecution does not violate the prohibition against double jeopardy. We agree with the State.

Both the federal and state constitutions contain double jeopardy clauses which protect an accused from: (1) a second prosecution following an acquittal; (2) a second prosecution following conviction; and (3) multiple punishments for the same offense. See U.S. Const. amend. V; Tenn. Const. art. I, § 10; State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996). Because the assessment of a tax is not a conviction, the appellant's claim relates to the third category. The United States Supreme Court has recognized that a tax can be so punitive that it constitutes a punishment. Dep't of Revenue of Mont. v. Kurth Ranch, 511 U.S. 767, 783, 114 S. Ct. 1937, 1948 (1994) (analyzing whether Montana drug tax constituted a punishment for double jeopardy purposes). Although taxes, unlike other sanctions, are typically motivated by a desire to raise revenue rather than to punish, "a tax is not immune from double jeopardy scrutiny simply because it is a tax." Id. at 779-80, 114 S. Ct. at 1946.

The question of whether a tax constitutes a criminal punishment for double jeopardy purposes is, "at least initially, a matter of statutory construction." Hudson v. United States, 522 U.S. 93, 99, 118 S. Ct. 488, 493 (1997) (assessing whether a subsequent indictment for misapplication of bank funds violated double jeopardy when the government had already imposed monetary penalties and professional disbarment on bank officers). We look first to how the legislature characterized the sanction. Id. If the legislature has characterized it as a civil, rather than a criminal, penalty, then we examine the sanction's purpose or effect to determine whether either is so punitive as to turn what the legislature intended to be a civil sanction into a criminal punishment. Id. The Supreme Court has set out the following factors, which considered in relation to the legislative intent, guide the determination:

(1) "[w]hether the sanction involves an affirmative disability or restraint";
(2) "whether it has historically been regarded as a punishment";
(3) "whether it comes into play only on a finding of *scienter*";
(4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence";
(5) "whether the behavior to which it applies is already a crime";
(6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and
(7) "whether it appears excessive in relation to the alternative purpose assigned."

Id. at 99-100, 118 S. Ct. 493 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S. Ct. 554, 567-68 (1963)).  None of these Kennedy factors is alone dispositive.  Id. at 101, 118 S. Ct. at 494; Kennedy, 372 U.S. at 169, 83 S. Ct. at 568.  In supplying these guidelines, the Supreme Court emphasized that "'only the clearest proof'" can overcome the legislative intent that a sanction be considered civil in nature.  Hudson, 522 U.S. at 100, 118 S. Ct. 493 (quoting United States v. Ward, 488 U.S. 242, 249, 100 S. Ct. 2636, 2641-42 (1980)).[1]

The Tennessee Supreme Court has applied the two-part federal test to determine whether a civil sanction is really a punishment for double jeopardy purposes.  Stuart v. State Dep't of Safety, 963 S.W.2d 28, 32 (Tenn. 1998) (holding that a civil forfeiture is not a criminal punishment implicating double jeopardy protections).  Our supreme court described the two prongs as follows:

> Under the first prong, we must determine whether the legislature intended forfeiture proceedings to be criminal or civil. Under the second prong, we must consider whether "the clearest proof" demonstrates that, despite legislative intent, the forfeiture proceedings are so punitive in fact that they cannot be legitimately viewed as civil in nature.

Id. (citing United States v. Ursery, 518 U.S. 267, 288, 116 S. Ct. 2135, 2147 (1996) (assessing whether the federal forfeiture laws were a punishment for double jeopardy purposes)).

---

[1] The Supreme Court in Hudson repudiated the test set forth in United States v. Halper, 490 U.S. 435, 448, 109 S. Ct. 1892, 1901-02 (1989), which looked to whether the sanction imposed was grossly disproportionate to the harm sanctioned and examined the "character" of the sanction as opposed to the plain language of the statute.  Hudson, 522 U.S. at 101, 118 S. Ct. at 494.  The Court determined that the Halper test was "unworkable" because "all civil penalties have some deterrent effect" and, instead, embraced the earlier test used in Ward, 448 U.S. at 248-49, 100 S. Ct. at 2641-42, and Kennedy, 372 U.S. at 168-69, 83 S. Ct. at 567-68.  Hudson, 522 U.S. at 102, 118 S. Ct. at 494.  Despite the fact that Kurth Ranch was decided in the wake of Halper, the Hudson court noted it with approval for applying "a Kennedy-like test."  Hudson, 522 U.S. at 102 n.6, 118 S. Ct. at 495 n.6.  Moreover, the Court in Kurth Ranch stated that the Halper test did not work for a tax statute.  Kurth Ranch, 115 U.S. at 784, 114 S. Ct. at 1948.  Accordingly, Kurth Ranch has not been repudiated along with Halper and provides a useful comparison for our analysis of the Tennessee drug tax.

Turning to the case before us, the legislature has characterized the Tennessee drug tax as an excise tax imposed upon dealers for the actual or constructive possession of unauthorized substances. Tenn. Code Ann. § 67-4-2803(a). "The tax is payable within forty-eight (48) hours after the dealer acquires actual or constructive possession of a non-tax-paid unauthorized substance, exclusive of Saturdays, Sundays, and legal holidays of this state, in which case the tax is payable on the next working day." Tenn. Code Ann. § 67-4-2806. Upon payment of the tax, the commissioner will issue a stamp, which must be permanently affixed to the controlled substance. Tenn. Code Ann. §§ 67-4-2805(a), -2806. The legislature's stated purpose in enacting the tax is "to generate revenue for state and local law enforcement agencies for use by those agencies to investigate, combat, prevent and reduce drug crimes, and for the general fund." Tenn. Code Ann. § 67-4-2801. The fact that the legislature did not intend for the drug tax to bar subsequent criminal prosecution is expressly set forth: "Nothing in this part may in any manner provide immunity from criminal prosecution for a person who possesses an illegal substance." Tenn. Code Ann. § 67-4-2801. Moreover, the "provisions of this part shall not be construed to confer any immunity from criminal prosecution or conviction for a violation of title 39, chapter 17, part 4, upon any person who voluntarily pays the tax imposed by this part or who otherwise complies with the provisions of this part." Tenn. Code Ann. § 67-4-2810.

Applying the first prong of the federal test, we observe that the Tennessee drug tax on its face reveals a clear legislative intent for the act to be a civil remedy. The plain language of the provisions set out above reveals that the legislature intended the drug tax to raise revenue for drug investigations rather than to punish someone in possession of unauthorized substances. Despite the unambiguous nature of the legislative intent, the second prong of the federal test focuses on whether the actual purpose or effect of the drug tax is punitive. We turn next to the Kennedy factors to determine whether "clearest proof" to overcome the legislature's intent exists.

Whether a sanction creates an "affirmative disability or restraint," as is asked in the first Kennedy factor, relates to the type of impact it has on the person sanctioned. Hudson, 522 U.S. at 104, 118 S. Ct. at 495. Whether this factor indicates that the sanction actually has the effect of a criminal punishment is judged by comparing the sanction's impact to the "'infamous punishment' of imprisonment." Id. (quoting Flemming v. Nestor, 363 U.S. 603, 617, 80 S. Ct. 1367, 1376 (1960)). Payment of a tax bears little resemblance to the deprivation of one's liberty when incarcerated. Similarly, under the second Kennedy factor, taxes have not historically been regarded as a punishment. See Kurth Ranch, 511 U.S. at 779, 114 S. Ct. at 1945-46.

The third Kennedy factor examines whether the sanction in question is triggered only upon a finding of scienter or guilty knowledge on the part of the person being sanctioned. A requirement of a particular mental state for the sanction to apply would indicate that the sanction was criminal in nature. Bailey v. Drexel Furniture Co., 259 U.S. 20, 37, 42 S. Ct. 449, 450 (1922) (holding that "[s]cienters are associated with penalties, not with taxes"). The imposition of Tennessee's drug tax does not require a finding that the dealer has a particular mental state. Instead, the legislature expressly called the tax an excise tax. Tenn. Code Ann. § 67-4-2803(a). In Tennessee, an excise tax is synonymous with a privilege tax, and the Tennessee drug tax imposes a tax upon the privilege

of possessing an unauthorized substance. <u>Steven Waters v. Loren L. Chumley</u>, No. E2006-02225-COA-R3-CV, 2007 WL 2500370, at **2-3 (Tenn. Ct. App. at Knoxville, Sept. 6, 2007), <u>application for perm. to appeal granted</u>, (Tenn., Jan. 28, 2008).[2] Accordingly, this factor weighs in favor of the drug tax being a civil remedy rather than a criminal punishment.

The fourth <u>Kennedy</u> factor looks at whether the sanction will promote retribution and deterrence, which are traditionally the goals of punishment. The appellant argues that the remarkably high tax rate for Tennessee's drug tax is designed to deter individuals from possession rather than to raise revenue. All taxes can potentially deter certain behavior. <u>Kurth Ranch</u>, 511 U.S. at 777, 114 S. Ct. at 1945. "Criminal fines, civil penalties, civil forfeitures, and taxes all share certain features: They generate government revenues, impose fiscal burdens on individuals, and deter certain behavior." <u>Id.</u> In <u>Kurth Ranch</u>, the Court found that the Montana drug tax rate, which was eight times the market value of the drugs, was "remarkably high" and was one factor indicating that the tax was actually a punishment. <u>Id.</u> at 780, 114 S. Ct. at 1046. In the present case, the trial court found that Tennessee taxes cocaine at a rate of $50 per gram and that the market value of cocaine is $50 to $100 per gram.[3] <u>See</u> Tenn. Code Ann. § 67-4-2803(4). The trial court held that this tax

_____

[2]In <u>Waters</u>, the Court of Appeals held that the Tennessee drug tax is arbitrary, capricious, and unconstitutional under the Tennessee Constitution because the legislature is taxing as a privilege an action that it has previously determined to be a crime. <u>Waters</u>, No. E2006-02225-COA-R3-CV, 2007 WL 2500370, at *3. In assessing the constitutionality of the drug tax, the Court of Appeals did not address whether a subsequent criminal prosecution after the drug tax had been levied would violate the protection against double jeopardy. Thus, our sister court's determination that the tax is unconstitutional does not answer the question we face in the present case, whether the former imposition of the drug tax was a civil penalty or a criminal one for double jeopardy purposes. Moreover, this court is not bound by an unpublished decision of the Court of Appeals on a constitutional matter:

> Where civil and criminal appellate courts are separate, decisions of one on matters exclusively within its jurisdiction are binding on the other.
>
> Where a state has distinct courts of last resort in civil and criminal cases, the decisions of the civil courts as to matters exclusively within their jurisdiction are binding on the criminal courts, and the civil courts are, in turn, bound by the decisions of the criminal courts with respect to matters of criminal law. However, the criminal courts are not bound by the decisions of the civil courts with respect to criminal matters.

21 C.J.S. Courts § 213 (2008). Constitutional matters, such as the double jeopardy question at issue here, are not exclusively within the jurisdiction of the Court of Appeals.

[3]The trial court based its finding of the market value of cocaine upon the year 2000 prices from a graph of average cocaine prices contained in the United States Sentencing Commission's <u>Report to the Congress: Cocaine and Federal Sentencing Policy</u>, at 66 (May 2002), available at http://www.ussc.gov/r_congress/02crack/2002crackrpt.htm. The Commission's more recent report, <u>Report to the Congress: Federal Cocaine Sentencing Policy</u>, at 92 (May 2007), available at http://www.ussc.gov/reports.htm, gives the national average price for a gram of powder cocaine as $110 in 2005. We question whether the national average price for a gram of cocaine is the best data for assessing whether Tennessee's drug tax rate is punitive. "Market value can change . . . depending on such factors as quality, supply and demand, and volume sold." <u>Simpson v. Bouker</u>, 249 F.3d 1204, 1211 n.2 (10th Cir. 2001) (evaluating the Kansas drug

(continued...)

-5-

rate was not "remarkably high." As noted below, we do not have sufficient information to determine whether Tennessee's drug tax rate is high in relation to the market value of the cocaine involved in this case. Nevertheless, comparing Tennessee's drug tax rate as determined by the trial court to that in Kurth Ranch, we agree with the trial court that Tennessee's tax rate is not so high as to impose a criminal punishment.

The fifth Kennedy factor asks whether the behavior taxed is already a crime. In Tennessee, the possession of a controlled substance is a crime unless it was obtained by a valid prescription or upon the order of a practitioner. Tenn. Code Ann. § 39-17-418(a). "As a general matter, the unlawfulness of an activity does not prevent its taxation." Kurth Ranch, 511 U.S. at 777, 114 S. Ct. at 1945 (citing Marchetti v. United States, 390 U.S. 39, 44, 88 S. Ct. 697, 700 (1968)). On the other hand, the fact that a tax is conditioned upon the commission of a crime is indicative of a penal, rather than remedial, purpose. Id. at 781, 114 S. Ct. at 1947. In Kurth Ranch, the Court emphasized that the Montana drug tax arose not only from the commission of a crime but was imposed only after arrest. Id. In other words, persons who had been arrested on drug charges made up "the entire class of taxpayers subject to the Montana tax." Id. at 781-82, 114 S. Ct. at 1947. Although the Tennessee drug tax is also conditioned upon the commission of a crime (possession of a controlled substance), it is not restricted to persons who have been arrested but contains provisions by which a dealer may pay the tax voluntarily and anonymously. Tenn. Code Ann. § 67-4-2805(a). Moreover, at the time the Montana drug tax, which was characterized by the Montana legislature as a property tax, was imposed, the taxpayer was no longer in possession of the substance for which he or she was being taxed. Kurth Ranch, 511 U.S. at 783, 114 S. Ct. at 1948. Because the Tennessee drug tax can be paid voluntarily, it does not necessarily follow that the unauthorized substances will have been seized by the time the dealer pays the tax. Because the Montana drug tax was conditioned on the commission of a crime, assessed only after the taxpayer had been arrested, and always paid upon property which the taxpayer no longer possessed, the Supreme Court held it to be a criminal penalty:

> A tax on "possession" of goods that no longer exist and that the taxpayer never lawfully possessed has an unmistakable punitive character. This tax, imposed on criminals and no others, departs so far from normal revenue laws as to become a form of punishment.

Id. In contrast, although the Tennessee drug tax is also conditioned upon the commission of a crime, it does not so drastically depart from normal revenue generating laws as the Montana drug tax.

The appellant argues that in addition to the Tennessee drug tax being conditioned on the commission of a crime, nonpayment of the tax is itself a crime. See Tenn. Code Ann. § 67-4-220. We observe that this is true for the nonpayment of any of a number of Tennessee privilege taxes.

---

[3](...continued)

tax in light of Kurth Ranch). Nevertheless, we appreciate that the opportunity for fact finding below was limited due to the stage of the proceedings in which this appeal was brought. Furthermore, "although the tax rate may be high, a high rate of tax does not automatically render a tax criminal punishment for purposes of Double Jeopardy." Id.

Tenn. Code Ann. § 67-4-220(a). Nevertheless, the fact that a taxpayer who fails to comply with a tax law is subject to a criminal penalty does not convert the tax itself into a criminal punishment. Moreover, the Tennessee drug tax provides for dealers to pay the tax anonymously. Tenn. Code Ann. § 67-4-2805. Thus, unlike the drug tax itself, the nonpayment provision is not conditioned upon the crime of possession of the controlled substance.

The sixth Kennedy factor examines whether the sanction has a rational purpose other than punishment. As noted above, the Tennessee drug tax expressly states that its purpose is to create revenue for use by law enforcement in addressing drug crimes and for the general fund. Tenn. Code Ann. § 67-4-2801. This is distinct from the Montana drug tax in which the legislature stated in the Act's preamble that it intended to deter drug crimes as well as to produce revenue. Kurth Ranch, 511 U.S. at 780, 114 S. Ct. at 1946.

Finally, the seventh Kennedy factor assesses whether the sanction in question is excessive compared to the sanction's purpose. In her dissenting opinion in Kurth Ranch, Justice O'Connor observed that the "State and Federal Governments spend vast sums on drug control activities." Kurth Ranch, 511 U.S. at 794, 114 S. Ct. at 1953 (O'Connor, J., dissenting) (citing U.S. Dept. of Justice, Bureau of Justice Statistics, Fact Sheet: Drug Data Summary 5 (Apr. 1994) (approximately $27 billion spent on drug control in 1991)). In light of the high cost of investigating and combating drug crimes, the Tennessee drug tax rate does not appear to be excessive, especially when compared with the Montana drug tax rate.

Viewing the application of all of the Kennedy factors to the Tennessee drug tax together, they do not reveal that the drug tax has the actual purpose or effect of a criminal penalty. In reaching the opposite result regarding the Montana drug tax, the Supreme Court in Kurth Ranch observed that "[t]aken as a whole, this drug tax is a concoction of anomalies, too far-removed in crucial aspects from a standard tax assessment to escape characterization as punishment for the purpose of double jeopardy analysis." The Tennessee drug tax does not suffer from those same anomalies, particularly the limitation of the entire class of taxpayers to those who have been arrested for drug crimes and the fact that the Montana tax was a property tax only imposed after the property taxed had been confiscated. Other states with drug taxes similar to Tennessee's have held them to be civil rather than criminal penalties under the Kurth Ranch analysis. See Milner v. State, 658 So. 2d 500, 502 (Ala. Civ. App. 1994); Covelli v. Commissioner, 668 A.2d 699, 705 (Conn. 1995), vacated and remanded, Covelli v. Crystal, 518 U.S. 1031 (1996) (ordered court to reconsider decision in light of United States v. Ursery, 518 U.S. 267, 116 S. Ct. 2135 (1996)), aff'd on remand, 683 A.2d 737, 737 (Conn. 1996); State v. Lange, 531 N.W.2d 108, 117 (Iowa 1995); State v. Gulledge, 896 P.2d 378, 389 (Kan. 1995); Commonwealth v. Bird, 979 S.W.2d 915, 917 (Ky. 1998); State v. Stubblefield, 543 N.W.2d 743, 748 (Neb. 1996); North Carolina School Boards Ass'n v. Moore, 614 S.E.2d 504, 516 (N.C. 2005); McMullin v. Dep't of Revenue, 469 S.E.2d 600, 602 (S.C. 1996).

North Carolina's drug tax is similar to Tennessee's in that it is also an excise tax imposed for the possession of controlled substances. Moore, 614 S.E.2d at 515. Under the North Carolina tax, dealers are required to pay the tax within forty-eight hours of receipt of the substance, can pay

anonymously, and are issued a stamp to be affixed to the unauthorized substance. Id. The purpose of the statute is to generate revenue for law enforcement and the general fund, and the statute expressly states that the tax provides no immunity from criminal prosecution, just as in Tennessee. Id. The North Carolina Supreme Court has held that the drug tax did not share the unusual features of the Montana tax in Kurth Ranch. Moore, 614 S.E.2d at 515. Specifically, imposition of the North Carolina tax does not turn upon the dealer's arrest, nor is the property taxed necessarily destroyed at the time the tax is imposed. Id. at 516. Accordingly, the court affirmed that the North Carolina tax was not a penalty, noting that "'the North Carolina statute is a legitimate and remedial effort to recover revenue from those persons who would otherwise escape taxation when engaging in the highly profitable, but illicit and sometimes deadly activity of possessing, delivering, selling or manufacturing large quantities of controlled drugs.'" Id. (quoting State v. Ballenger, 472 S.E.2d 572, 575 (N.C. Ct. App. 1996) (upholding prior version of North Carolina drug tax against double jeopardy challenge), aff'd per curiam, 481 S.E.2d 84 (1997)).

Alabama, Connecticut, Iowa, Kansas, Kentucky, and South Carolina have also held that their state tax on unauthorized substances survived double jeopardy scrutiny because they did not have the anomalies of imposition only upon arrest and after confiscation of the taxed substances. Milner, 658 So. 2d at 502 (imposition of Alabama drug tax after criminal prosecution does not violate double jeopardy); Covelli, 668 A.2d at 705 (observing that "Connecticut's [drug] tax is neither predicated upon arrest nor is it assessed on property that has necessarily been confiscated or destroyed"); Lange, 531 N.W.2d at 117 (holding that Iowa drug tax did not possess the anomalous features of the Montana tax); Gulledge, 896 P.2d at 389 (holding that the Kansas drug tax does not contain the "unusual features" found in the Montana drug tax by the Court in Kurth Ranch); Bird, 979 S.W.2d at 917 (determining that Kentucky drug tax was not conditioned upon arrest and did not require confiscation of the drugs in question); McMullin, 469 S.E.2d at 602 (holding that South Carolina drug tax did not contain the "unusual features" of required arrest and possible confiscation); see also Simpson v. Bouker, 249 F.3d 1204, 1211 (10th Cir. 2001) (upholding the Kansas drug tax in light of Kurth Ranch); Padavich v. Thalacker, 162 F.3d 521, 523 (8th Cir. 1998) (holding Iowa's drug tax did not implicate double jeopardy because it is not conditioned on the commission of a crime, not imposed only upon arrest, and provides a means by which it can be paid anonymously); Stubblefield, 543 N.W.2d at 748 (holding that the Nebraska drug tax and the Nebraska drug control statutes contain different elements and that the imposition of the drug tax is not contingent upon arrest).

In summation, considering the Kennedy factors as they apply to Tennessee's drug tax, we hold that the legislative intent that the tax is civil rather than criminal in nature has not been overcome by evidence to the contrary, much less by "the clearest proof." Although the fact that the tax is conditioned upon the commission of a crime weighs in favor of a punitive effect, this factor alone is not dispositive. Accordingly, the Tennessee drug tax is not a criminal punishment for purposes of the double jeopardy clause, and, thus, the appellant's prosecution for possession of cocaine with intent to sell or deliver would not impose a second punishment for the same act. We affirm the trial court's order denying the appellant's motion to dismiss the indictment.

## III. Conclusion

Based upon the record and the parties' briefs, we affirm the trial court's order denying the motion to dismiss the indictment and remand the case for further proceedings consistent with this opinion.

 

 

_____
NORMA McGEE OGLE, JUDGE