IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,915

STATE OF KANSAS,
*Appellee*,

v.

JEFFREY L. PRIBBLE,
*Appellant.*

SYLLABUS BY THE COURT

1.

Multiplicity is the charging of a single offense in several counts of a complaint or information which creates the potential for multiple punishments for a single offense in violation of the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights.

2.

The test for determining whether convictions are multiplicitous has two components: (1) Whether the convictions arose from the same conduct; and (2) whether the applicable statutory provisions define two offenses or only one.

3.

In determining whether convictions arose from the same conduct, a court considers the following factors: (1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.

1

4.

Where two convictions are based on violations of the same statute, a court must determine what the legislature intended as the allowable unit of prosecution because multiplicity only allows one conviction for each identified unit of prosecution.

5.

K.S.A. 79-5208 makes it a crime for a drug dealer, as defined in K.S.A. 2010 Supp. 79-5201(c), to distribute or possess marijuana or controlled substances without affixing the appropriate drug tax stamps, labels, or other indicia of payment of the drug tax imposed by K.S.A. 79-5202. A drug dealer's possession of both marijuana and a controlled substance, such as methamphetamine, at the same time and at the same location, without the appropriate drug tax stamps affixed, constitutes one unit of prosecution absent any proof that the drugs were acquired, and the duty to affix the drug tax stamps arose, at different times.

6.

A prosecutor is given wide latitude in closing arguments, but such arguments must remain consistent with the evidence. A prosecutor may not misstate the law applicable to the evidence presented, may not offer a personal opinion about witness credibility, and may not shift the burden of proof to the defendant.

7.

If a prosecutor commits error during closing argument, the State bears the burden of establishing that there is no reasonable possibility that the error affected the verdict.

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 21, 2014. Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed July 15, 2016. Judgment of the Court of Appeals affirming the district court is affirmed in part, reversed in part, and

remanded with directions. Judgment of the district court is affirmed in part, reversed in part, and remanded with directions.

*Peter Maharry*, of Kansas Appellate Defender Office, argued the cause, and *Lydia Krebs*, of the same office, was on the brief for appellant.

*Julie A. Koon*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Jeffrey L. Pribble seeks review of the Court of Appeals decision to affirm his convictions on numerous drug offenses and his 42 months' imprisonment sentence. The Court of Appeals affirmed Pribble's convictions after rejecting Pribble's claims that (1) the charges for possession of marijuana with no drug tax stamp and possession of methamphetamine with no drug tax stamp constituted only one crime, rendering the two convictions multiplicitous; (2) the prosecutor committed reversible misconduct during his closing argument; and (3) the district court violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by using his prior convictions to enhance his sentence under the sentencing guidelines without requiring the State to prove the existence of those prior convictions to a jury beyond a reasonable doubt. This court granted Pribble's petition for review. Finding that the drug tax stamp statute contemplates only one unit of prosecution under these facts, we reverse one of those convictions and remand for resentencing.

FACTUAL AND PROCEDURAL OVERVIEW

While executing a search warrant at Pribble's house, law enforcement officers discovered and seized drug-buy money, over 800 grams of marijuana, more than 14

3

grams of methamphetamine, and various items of drug paraphernalia. None of the drugs bore the requisite drug tax stamps. As a result, Pribble was charged with possessing marijuana, methamphetamine, paraphernalia, and drug-sale proceeds. Of particular interest here, the State also charged Pribble with two taxation offenses under K.S.A. 79-5208, to-wit: one count of possession of marijuana with no drug tax stamp and one count of possession of methamphetamine with no drug tax stamp.

Pribble testified that none of the seized drugs or paraphernalia belonged to him and offered explanations for the incriminating circumstances. Nevertheless, the jury convicted Pribble as charged. This appeal ensued.

MULTIPLICITY

Pribble first challenges the Court of Appeals determinations that "Pribble's convictions of possession of marijuana with no drug tax stamp and possession of methamphetamine with no drug tax stamp do not arise from the same conduct and, by statutory definition, constitute two separate offenses." *State v. Pribble*, No. 108,915, 2014 WL 1193337, at *4 (Kan. App. 2014) (unpublished opinion). Those determinations led the panel to "conclude that the convictions are not multiplicitous in violation of the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights." 2014 WL 1193337, at *4.

Pribble's challenge to the panel's holding is founded on our definition of multiplicity as being "the charging of a single offense in several counts of a complaint or information." *State v. Thompson*, 287 Kan. 238, 244, 200 P.3d 22 (2008); *State v. Schoonover*, 281 Kan. 453, 475, 133 P.3d 48 (2006). We have noted that "[t]he principal danger of multiplicity is that it creates the potential for multiple punishments for a single offense, which is prohibited by the Double Jeopardy Clauses of the Fifth Amendment to

4

the United States Constitution and § 10 of the Kansas Constitution Bill of Rights." *Thompson*, 287 Kan. at 244.

*Standard of Review*

A K.S.A. 79-5208 violation occurs when a drug dealer distributes or possesses marijuana or controlled substances without having affixed the appropriate stamps, labels, or other indicia of having paid the tax imposed on the dealer's drugs. Whether the State charged a single drug tax stamp offense in two counts of the complaint or information presents a question of law subject to unlimited review. See *Schoonover*, 281 Kan. at 462.

*Analysis*

The Court of Appeals loosely applied *Schoonover*'s two-component test for determining whether convictions are multiplicitous. Under that rubric, a court first looks at whether the convictions arose from the same conduct, considering such factors as:

> "(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." 281 Kan. 453, Syl. ¶ 16.

If the same-conduct prong is met, the second component of the test focuses on whether the applicable statutory provisions define "two offenses or only one." 281 Kan. 453, Syl. ¶ 15.

The panel first determined that Pribble's possession of two different drugs constituted two separate acts that would support two convictions, notwithstanding the acknowledged fact that "the charged acts occurred at the same time and location."

5

*Pribble*, 2014 WL 1193337, at *3. In addition to the conceded applicability of the first two *Schoonover* factors (same time and same location), the remaining two factors favor a determination that the convictions arose from the same conduct. The fact that all of the drugs found at Pribble's house—at the same time and in the same place—were devoid of any affixed drug tax stamp does not support the notion that there was any intervening event between the alleged criminal acts. Likewise, the reasonable inference to be drawn from these circumstances is that the same impulse—to avoid detection and evade taxes— was the likely motivation for failing to pay the tax and affix the tax stamps to both drugs. In short, both drug tax stamp convictions arose from the same conduct, *i.e.*, a drug dealer's "distributing or possessing marijuana or controlled substances without affixing the appropriate stamps, labels or other indicia." K.S.A. 79-5208.

Notwithstanding the Court of Appeals' determination that Pribble's convictions did not meet the first multiplicity requirement of separate conduct, it chose to proceed to the second step. Because Pribble's two convictions were based on violations of the same statute, K.S.A. 79-5208, the panel applied *Schoonover*'s unit of prosecution test to determine whether the legislature intended two offenses or only one. *Pribble*, 2014 WL 1193337, at *4. Under this test, a court looks at "the statutory definition of the crime" to determine "what the legislature intended as the allowable unit of prosecution," and then allows only one conviction for each identified unit of prosecution. *Schoonover*, 281 Kan. at 497-98.

The panel focused on portions of K.S.A. 2010 Supp. 79-5201(c), which is a subsection of the definitions provision of the act addressing the taxation of marijuana and controlled substances, K.S.A. 79-5201 *et seq*. That particular definition states as follows:

"(c) 'dealer' means any person who, in violation of Kansas law, manufactures, produces, ships, transports or imports into Kansas or in any manner acquires or possesses

6

more than 28 grams of marijuana, or more than one gram of any controlled substance, or 10 or more dosage units of any controlled substance which is not sold by weight." K.S.A. 2010 Supp. 79-5201(c).

The panel opined that, because that definitional statute "requires the State to prove a defendant possessed different amounts of marijuana versus a controlled substance such as methamphetamine, . . . the legislature clearly intended that possession of each drug without the requisite tax stamp would constitute a separate violation of the statute." *Pribble*, 2014 WL 1193337, at *4. We discern that the panel read too much into the legislature's definition of a drug "dealer," especially when the act is viewed as a whole.

Globally, the statutory provisions in play here are part of an act dealing with *taxation*, rather than being part of this state's criminal code. The topic of Chapter 79 of the Kansas Statutes Annotated is designated as "Taxation," while Article 52 of this taxation chapter deals with "Marijuana and Controlled Substances." As noted, K.S.A. 2010 Supp. 79-5201 contains definitions applicable to the taxation of marijuana and controlled substances, specifically defining "marijuana," "controlled substance," "dealer," and "domestic marijuana plant."

The next statute, K.S.A. 79-5202, imposes the tax, sets the rates of taxation, and describes the measure to be used to calculate the tax. Significantly, the provision states that "[t]here is hereby imposed *a tax* upon marijuana, domestic marijuana plants *and* controlled substances . . . at the following rates," thereafter stating different rates of taxation for marijuana, wet domestic marijuana plants, dry domestic marijuana plants, controlled substances sold by weight, and controlled substances not sold by weight. (Emphasis added.) K.S.A. 79-5202(a)(1)-(5). That language suggests that the legislature was imposing but one tax on the drugs but calculating the amount of that tax by applying differing rates of taxation.

Continuing in that same vein, K.S.A. 79-5204(a) provides: "No dealer may possess any marijuana, domestic marijuana plant or controlled substance upon which *a tax* is imposed pursuant to K.S.A. 79-5202, and amendments thereto, unless *the tax* has been paid as evidenced by an official stamp or other indicia." (Emphasis added.) Subsection (c) also uses the singular form of tax, to-wit:

"When a dealer purchases, acquires, transports, or imports into this state marijuana, domestic marijuana plants or controlled substances on which *a tax* is imposed by K.S.A. 79-5202, and amendments thereto, and if the indicia evidencing the payment of *the tax* have not already been affixed, the dealer shall have them permanently affixed on the marijuana, domestic marijuana plant or controlled substance immediately after receiving the substance." (Emphasis added.) K.S.A. 79-5204(c).

Granted, in subsection (d) of that provision, the legislature used the plural form, stating that "[t]axes imposed upon marijuana, domestic marijuana plants or controlled substances by this act are due and payable immediately upon acquisition or possession in this state by a dealer." K.S.A. 79-5204(d). But in the very next statute, the legislature again speaks as if there is but a single tax being assessed:

"At such time as the director of taxation shall determine that a dealer has not paid *the tax* as provided by K.S.A. 79-5204, and amendments thereto, the director may immediately assess *a tax* based on personal knowledge or information available to the director of taxation; mail to the taxpayer at the taxpayer's last known address or serve in person, a written notice of the amount of tax, penalties and interest; and demand its immediate payment." (Emphasis added.) K.S.A. 2010 Supp. 79-5205(a).

Perhaps most importantly, the specific provision imposing a tax penalty and creating criminal liability does not indicate that a tax liability generated by possessing

8

more than one type of drug at the same time and same place creates multiple offenses for the same conduct of failing to affix the requisite drug tax stamps. That statute states:

"Any dealer violating this act is subject to a penalty of 100% of *the tax* in addition to *the tax* imposed by K.S.A. 79-5202 and amendments thereto. In addition to *the tax* penalty imposed, a dealer distributing or possessing marijuana or controlled substances without affixing *the appropriate stamps, labels or other indicia* is guilty of a severity level 10 felony." (Emphasis added.) K.S.A. 79-5208.

The statute can reasonably be read to mean that K.S.A. 79-5202 imposes a single tax, notwithstanding the differing rates that might be applied to calculate the total tax on the various taxable drugs in the dealer's possession. Moreover, as Pribble argues, the statute provides that the failure to affix "the appropriate stamps" (plural) makes the dealer "guilty of *a* . . . felony" (singular), suggesting one unit of prosecution even where both marijuana stamps and controlled substances stamps are "appropriate." Of course, another explanation for referring to the plural, "stamps," might be the possibility that multiple stamps could be required on a single drug. See K.S.A. 79-5204(b) ("The director shall issue the stamps, labels or other indicia in denominations in multiples of $10."). But such an explanation does not parallel K.S.A. 79-5204(a), which proscribes the possession of drugs by a dealer "unless the tax has been paid as evidenced by an *official stamp* or other indicia." (Emphasis added.) In other words, the statute describing the prohibited possession of untaxed drugs does not contemplate more than one stamp being necessary to evidence the payment of the requisite tax.

Viewing all of the statutory provisions together suggests that the legislature intended to impose a tax on the marijuana or controlled substances possessed by drug dealers and to make it a crime for those drug dealers to fail to evidence the payment of that drug tax with the appropriate stamps. Consequently, the clear purpose of K.S.A. 2010 Supp. 79-5201(c)'s definition of "dealer" is to differentiate between drug dealers

9

and personal-use possessors of drugs, and, thereby, clarify who is a taxpayer under the act that can be subject to the criminal sanction of K.S.A. 79-5208. In that regard, the legislature's designation of more grams to be considered a marijuana dealer than that required to be a methamphetamine dealer has a basis in fact unrelated to establishing a unit of prosecution. Accordingly, we reject the proposition that K.S.A. 2010 Supp. 79-5201(c) clearly indicates a legislative intent to make the possession of two separate drugs two separate units of prosecution under K.S.A. 79-5208.

Therefore, under the facts presented in this record, we hold that Pribble's possession of both marijuana and methamphetamine, at the same time and the same location, without the appropriate drug tax stamps affixed, without any proof that the drugs were acquired at different times, constituted a single crime that should not have been charged in two counts. One count is reversed, and the matter is remanded for resentencing with one conviction for possessing drugs without a drug tax stamp.

PROSECUTORIAL MISCONDUCT

Next, Pribble contends that he was deprived of a fair trial by the prosecutor's closing argument. He claims the prosecutor misstated the law, impermissibly commented on witnesses' credibility, and shifted the burden of proof to the defense. Pribble's complaints are not devoid of merit.

*Standard of Review/Analytical Framework*

Pribble did not object at trial to the prosecutor's comments, but the same standard of review applies to a claim of prosecutorial error during closing argument regardless of whether the defendant raised a contemporaneous objection. See *State v. Miller*, 293 Kan. 535, 550, 264 P.3d 461 (2011) (noting the special preservation rule). Appellate review of a prosecutor's closing argument requires a two-step analysis. First, an appellate court

10

decides whether the comments were outside the wide latitude that a prosecutor is allowed in discussing the evidence. Second, if misconduct or error is found, an appellate court must determine whether the improper comments prejudiced the jury against the defendant and denied the defendant a fair trial. *State v. Marshall*, 294 Kan. 850, 856, 281 P.3d 1112 (2012).

Prosecutors enjoy wide latitude in crafting closing arguments. See *State v. Scott*, 271 Kan. 103, 114, 21 P.3d 516 (citing *State v. Miller*, 268 Kan. 517, Syl. ¶ 4, 997 P.2d 90 [2000]), *cert. denied* 534 U.S. 1047 (2001). This latitude allows a prosecutor to argue reasonable inferences that may be drawn from the admitted evidence, but it does not extend so far as to permit arguing facts that are not in evidence. *State v. Tahah*, 293 Kan. 267, 277, 262 P.3d 1045 (2011). Likewise, "[p]rosecutors are not allowed to make statements that inflame the passions or prejudices of the jury or distract the jury from its duty to make decisions based on the evidence and the controlling law." *State v. Baker*, 281 Kan. 997, 1016, 135 P.3d 1098 (2006). In short, a prosecutor's arguments must remain consistent with the evidence.

*Analysis*

We will take each challenge in order, starting with the allegation that the prosecutor misstated the law applicable to possession of the illegal drugs. The prosecutor started on track, arguing as follows:

> "So what is possession? As the Judge told you, it means having joint or exclusive control over an item with knowledge of and the intent to have that control or knowingly keeping an item in some place where you have access or some measure of control over it."

11

But the prosecutor stumbled in trying to fashion a scenario that adequately explained the legal principles involved. The prosecutor's exemplar was as follows:

"If I was to walk into your home and find a remote control on a couch, well, *maybe Alex Martinez was over there and dropped off the remote control or maybe there was some big party, but it's still yours*. And this marijuana is in his suitcase. There is a tag for it. It's in his bedroom. It's in his toilet. It is in his freezer. It is everywhere." (Emphasis added.)

The district court's jury instruction, which was proper, told the jurors that the defendant's control over the item had to be "with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." To the contrary, the prosecutor's hypothetical implied that possession does not require intent when it stated that a third-person's deposit of an item in the defendant's house without the defendant's knowledge means that the defendant possessed the deposited item. But as a matter of law, Pribble would not "possess" an item that was dropped in his house without his knowledge. Therefore, the prosecutor's hypothetical about Martinez' remote control erroneously misstated the law for the jury. See *State v. Bunyard*, 281 Kan. 392, 406, 133 P.3d 14 (2006) ("Misstating the law is not within the wide latitude given to prosecutors in closing arguments.").

Our finding that the prosecutor exceeded the boundaries of fair argument sends us to the second step of determining whether the error requires reversal. In recent years, this court has looked at three factors in analyzing reversibility in prosecutorial misconduct cases, to-wit:  (1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. *State v. Raskie*, 293 Kan. 906, 914, 269 P.3d 1268 (2012).

12

In applying the factors, we often declare that none of them is individually controlling. See *Marshall*, 294 Kan. 850, Syl. ¶ 3. To aid in the determination of the first factor—whether the misconduct was gross and flagrant—we have considered whether the error was repeated, was emphasized, was in violation of a long-standing rule, was in violation of a clear and unequivocal rule, or was in violation of a rule designed to protect a constitutional right. 294 Kan. 850, Syl. ¶ 6. In analyzing whether a prosecutor's misconduct was motivated by ill will, we have considered whether the misconduct was deliberate, repeated, or in apparent indifference to a court's ruling. 294 Kan. 850, Syl. ¶ 7. Perhaps most importantly, we must consider the prosecutor's challenged comments "in the context in which they were made, not in isolation." *State v. Brown*, 300 Kan. 542, 560, 331 P.3d 781 (2014).

The prohibition against misstating the law is certainly a long-standing, clear, and unequivocal rule. Here, the prosecutor correctly stated the law for the jury but then inartfully tried to explain the law with an inaccurate hypothetical. In context, however, the prosecutor immediately followed the misstatement by pointing out that marijuana was everywhere in Pribble's house—in a suitcase with a tag on it, in his bedroom, in his toilet, and in his freezer. The obvious implication of the prosecutor's observation was that the ubiquitous presence of marijuana in a person's house belies the notion that the homeowner was unaware of its presence, which would be a statement well within the boundaries of fair argument. In other words, the prosecutor's erroneous hypothetical had no possibility of changing the result and does not require reversal. See *State v. Inkelaar*, 293 Kan. 414, 431, 264 P.3d 81 (2011) (State bears burden to establish no reasonable possibility the error affected the verdict).

Pribble's next challenge involves the conflicts between Pribble's testimony and the testimony of the law enforcement officers who searched the house. After telling the jurors that they had "to determine the weight and credibility to be given the testimony of each

13

witness"; that they should use their "common knowledge and experience" in reviewing "any matter about which a witness has testified"; and that numerous claims made by Pribble during his testimony were simply implausible, the prosecutor made the following statement:

> "Who is credible? Mr. Pribble says I don't want anything to do with marijuana, it's illegal. Well, that's why he's sitting in that chair, ladies and gentlemen. He says I don't approve of the culture. I don't like Bob Marley. I don't like Rastafarian. I don't like anything to do with that. I don't support marijuana. *I don't believe that's credible. And I don't believe you, ladies and gentlemen, should believe that's credible either.*
> "*I don't think those things add up, because we know that the officers didn't make him put that shirt on. We know the officers didn't tell him it had smallpox. They didn't say, hey, put this on, let's go out and get a picture*." (Emphasis added.)

The significance of the referenced shirt was that it contained a message promoting marijuana use. Later, during the prosecutor's rebuttal argument, he stated:

> "*Do not go down these rabbit holes, do not chase these red herrings*. Ladies and gentlemen, the State has met its burden. It's beyond a reasonable doubt, a reasonable doubt. I can't disprove things that don't happen, and the defense can't either." (Emphasis added.)

It is improper for a prosecutor to offer his or her personal opinion as to the credibility of a witness, including the defendant. See *State v. Elnicki*, 279 Kan. 47, 59-64, 105 P.3d 1222 (2005); *State v. Davis*, 275 Kan. 107, 121-23, 61 P.3d 701 (2003); *State v. Pabst*, 268 Kan. 501, 506-07, 996 P.2d 321 (2000). The reason is because "'such comments are "unsworn, unchecked testimony, not commentary on the evidence of the case."'" *State v. Peppers*, 294 Kan. 377, 396, 276 P.3d 148 (2012) (quoting *State v. Duong*, 292 Kan. 824, 830, 257 P.3d 309 [2011]). A prosecutor, however, "may explain the legitimate factors which a jury may consider in assessing witness credibility and may

argue why the factors present in the current case should lead to a compelling inference of truthfulness." *State v. Scaife*, 286 Kan. 614, Syl. ¶ 5, 186 P.3d 755 (2008); see, *e.g.*, *State v. Huerta-Alvarez*, 291 Kan. 247, 262, 243 P.3d 326 (2010) (finding that prosecutor's remarks in closing regarding victim's credibility "were generally in the nature of reviewing what [the victim] said, asking the jury to assess the credibility of her statements, and querying the jury why she would not have made up a more convenient story if in fact she had fabricated the story at all").

Often, the propriety of a prosecutor's point in closing argument will hinge upon how the statement is phrased. For instance, the statement, "The evidence contradicts the defendant's statement," is acceptable, whereas, "I don't believe the defendant's statement is credible," crosses the line. Here, the prosecutor stepped outside the wide latitude allowed when he gave the jury his personal opinion: "I don't believe that's credible. And I don't believe you, ladies and gentlemen, should believe that's credible either." Likewise, the prosecutor should not have offered his opinion that "I don't think those things add up." The other portions of the argument asked the jury to draw reasonable inferences from the evidence and fell within the wide latitude afforded to prosecutors notwithstanding the colorful language employed. See *State v. Albright*, 283 Kan. 418, 429-30, 153 P.3d 497 (2007) (noting that court has approved a variety of colorful analogies—such as "smoke and mirrors"—used by prosecutors during closing arguments to describe the defendant's theory of the case).

Turning to the second step on the prosecutor's erroneous statements of personal belief, we note that the prosecutor sent a mixed message, rather than just the wrong message. Before proffering his personal opinion, the prosecutor specifically told the jurors that it was their duty to determine the weight and credibility to be given to the testimony of each witness. Moreover, one would not expect the jurors to have been

15

surprised to learn that the prosecutor did not believe the defendant's exculpatory statements, given that the prosecutor was continuing to seek defendant's conviction.

Under the third factor, the evidence of Pribble's guilt was circumstantial in nature but substantial in quantity. The jurors heard testimony from law enforcement officers regarding the marijuana, packaging materials, labels, bongs, blow torches, methamphetamine, and a possible grow room found in Pribble's home. They saw photographs meticulously documenting the search as well as the large quantity of evidence seized. Accordingly, when viewed as a whole, the prosecutor's use of "I believe" and "I think" did not affect the verdict.

Pribble's final challenge to the State's closing argument involves the prosecutor's remarks early in his rebuttal to defense counsel's arguments. The defense had pointed out that law enforcement officers did not collect any fingerprint or DNA evidence during the search of Pribble's house and that the jury did not hear from numerous witnesses who could have corroborated Pribble's claim of being out of town for several weeks prior to the house search. The prosecutor responded with the following remarks:

> "[Defense counsel] tells you that the officers cut corners. They didn't get fingerprints. They didn't get fingerprints. They didn't collect semen off the toilet. They didn't collect fingerprints out of the house. They didn't do black light tests. They didn't get the DNA off the cans. He's right.
>
> "And he says that beyond a reasonable doubt is the highest burden in the land. Absolutely can't be any more. It's also the same thing that we've been doing since about 1789 before we did DNA, black lights, fingerprints, et cetera, et cetera. And we've been getting convictions ever since.
>
> "He says that it's hard to prove something that didn't happen. How do you disprove something? That's true. It's really hard. How do you prove a negative?
>
> "He says the State didn't prove anything. Well, ladies and gentlemen, *the defense has the exact same ability to subpoena witnesses. And if he was at Fall River, his sister*

16

*could have told us. His nephew could have told us there was a big party. Terry Moore*
*could have come in and said none of this stuff was there when I left the house. Alex*
*Martinez could have come in and said, yeah, I was at the house. And guess who we heard*
*from. No one.* Because how do I disprove something that didn't happen? How do I
disprove that he wasn't in Fall River, he was at his house hours before the search warrant
was executed, days before? Because Detective Olsen told you, yeah, I saw the pickup. I
didn't have a camera with me that day. We did this multiple times. Olsen is not hiding
anything. He told you exactly what he could remember, what he saw, what he
documented.

"It is my burden to prove this case, and the State has done that." (Emphasis
added.)

Pribble complains that the prosecutor's statements about the defense's ability to
call witnesses shifted the burden of proof to the defense. "Kansas courts deem it
'improper for the prosecutor to attempt to shift the burden of proof to the defendant or to
misstate the legal standard of the burden of proof.' [Citations omitted.] But we grant
prosecutors considerable latitude to address the weaknesses of the defense." *Duong*, 292
Kan. at 832 (quoting *State v. Stone*, 291 Kan. 13, 18, 237 P.3d 1229 [2010]); see *State v.
McKinney*, 272 Kan. 331, 346, 33 P.3d 234 (2001) (where jury has been properly
instructed that prosecution has burden of proof, a prosecutor may argue inferences based
on the balance or lack of evidence), *overruled on other grounds by State v. Davis*, 283
Kan. 569, 158 P.3d 317 (2007). In *Peppers*, this court stated:

"When a prosecutor's comment 'constitute[s] only a general question about the absence
of evidence to rebut the State's witnesses . . . and not an impermissible remark about the
defendant's failure to testify or an attempt to shift the burden of proof to the defense,' the
comment is within the wide latitude afforded to the prosecution." 294 Kan. at 397-98.

Particularly germane here is our precedent that a prosecutor does not shift the
burden of proof by pointing out the absence of evidence to support the defense argument

that there are holes in the State's case. See, *e.g.*, *State v. Williams*, 299 Kan. 911, 939, 329 P.3d 400 (2014) ("[I]f a defendant asks the jury to draw an inference that the State's evidence is not credible because the State did not call a witness to corroborate other evidence, we have held that the State can refute the inference by informing the jury that the defense has the power to subpoena witnesses, including those who would be favorable to the defense."); *Duong*, 292 Kan. at 832-33 (holding prosecutor's arguments questioning defendant's failure to present evidence of misidentification did not improperly shift burden of proof because prosecutor did not call upon defense to disprove crime's occurrence but rather pointed out that evidence supporting defense theory was thin).

Accordingly, the prosecutor did not improperly shift the burden of proof when he commented about Pribble's failure to call alibi witnesses who could have corroborated his theory of the case, *i.e.*, that he was out of town when the drugs came into his house. Moreover, Pribble testified at trial, so there was nothing about the statement that infringed on his right to remain silent. Furthermore, the prosecutor's comment was a fair rebuttal to defense counsel's argument that the State failed to collect certain evidence inside Pribble's home or call Moore and Martinez as alibi witnesses. In short, we find no error in this portion of the prosecutor's closing argument.

JUDICIAL FINDING OF CRIMINAL HISTORY

For his final issue, Pribble makes the familiar, but futile, argument that the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it imposed an increased sentence based upon his prior convictions without requiring the State to prove the existence of the convictions to a jury beyond a reasonable doubt.

18

Pribble concedes that his argument was rejected in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). This court has repeatedly confirmed *Ivory*'s holding. See, *e.g.*, *State v. Castleberry*, 301 Kan. 170, 191, 339 P.3d 795 (2014). Pribble advances no reason for this court to revisit *Ivory* and, thus, we decline to do so. Pribble's sentence under the guidelines, determined in part by his prior convictions, was not unconstitutional.

Affirmed in part, reversed in part, and remanded with directions.

STEGALL, J., not participating.
MICHAEL J. MALONE, Senior Judge, assigned.[1]

* * *

ROSEN, J., concurring in part and dissenting in part: I agree with the majority's conclusion that the prosecutor's comments during closing argument did not constitute reversible error. I also agree with the majority that the district court's use of Pribble's prior convictions to determine his sentence under the sentencing guidelines did not violate his constitutional rights as described in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). But I disagree with my colleagues' conclusion that Pribble's convictions for possession of marijuana with no drug tax stamp and possession of methamphetamine with no drug tax stamp are multiplicitous.

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 108,915 vice Justice Stegall under the authority vested in the Supreme Court by K.S.A. 20-2616.

19

The Kansas Drug Stamp Act is a means by which our legislature has attempted to hold accountable those who perpetuate and benefit financially from illegal drug trafficking. This accountability includes a distinction recognizing different levels of taxation based on a drug's detrimental societal impact, unwittingly capturing the essence of the "The Pusher," a song made famous years ago by the musical group Steppenwolf. A dealer of marijuana—"A man with the love grass in his hand" is taxed separately and at a significantly lower rate than a pusher—"a monster . . . he's not a natural man," who "don't care if you live . . . or if you die," that being a person who deals in addictive controlled substances. That person is taxed at a rate over 5,000% greater for possessing/selling a controlled substance compared to a possessor/seller of a similar quantity of marijuana. Even comparing the minimum amounts allowable for prosecution, 28 grams for possessing marijuana versus 1 gram for possessing a controlled substance, the tax on a controlled substance is more than double the taxed amount for marijuana.

While I have always questioned the constitutional limitations of such measures, drug stamp laws have withstood constitutional challenges, including the 5th Amendment's right against self-incrimination and its prohibition against double jeopardy. *State v. Jenson*, 259 Kan. 781, Syl. ¶ 2, 915 P.2d 109 (1996); see, *e.g.*, *State v. Gulledge*, 257 Kan. 915, Syl. ¶ 3, 896 P.2d 378 (1995); *State v. Durrant*, 244 Kan. 522, 523, Syl. ¶ 13, 769 P.2d 1174, *cert. denied* 492 U.S. 923 (1989). My reading of the Kansas Drug Tax Act indicates that the legislature clearly allowed for a person in Pribble's situation—a person possessing more than 28 grams of marijuana and more than 1 gram of methamphetamine without affixing appropriate drug tax stamps to either drug—to be convicted of two violations of K.S.A. 79-5208.

In *State v. Schoonover*, 281 Kan. 453, Syl. ¶ 15, 133 P.3d 48 (2006), we stated that two components must be met in order for convictions to be considered multiplicitous: "(1) Do the convictions arise from the same conduct? and (2) By statutory definition are

20

there two offenses or only one?" I agree with my colleagues that Pribble's drug-tax-stamp convictions arise from the same conduct. But I disagree with their construction of K.S.A. 79-5208.

Because Pribble's convictions arose from a single statute, we apply the unit of prosecution test. Under this test, a court looks at "the statutory definition of the crime" to determine "what the legislature intended as the allowable unit of prosecution. There can be only one conviction for each allowable unit of prosecution." *Schoonover*, 281 Kan. at 497-98.

K.S.A. 79-5208 states:

"Any dealer violating [the Kansas Drug Tax Act] is subject to a penalty of 100% of the tax in addition to the tax imposed by K.S.A. 79-5202 and amendments thereto. *In addition to the tax penalty imposed, a dealer distributing or possessing marijuana or controlled substances without affixing the appropriate stamps, labels or other indicia is guilty of a severity level 10 felony.*" (Emphasis added.)

The term "dealer" is defined as

"any person who, in violation of Kansas law, manufactures, produces, ships, transports or imports into Kansas or in any manner acquires or possesses more than 28 grams of marijuana, or more than one gram of any controlled substance, or 10 or more dosage units of any controlled substance which is not sold by weight." (Emphasis added.) K.S.A. 2010 Supp. 79-5201(c).

"Controlled substance" is defined as

"any drug or substance, whether real or counterfeit, as defined by K.S.A. 2010 Supp. 21-36a01, and amendments thereto, which is held, possessed, transported, transferred,

21

sold or offered to be sold in violation of the laws of Kansas. Such term shall not include marijuana." (Emphasis added.) K.S.A. 2010 Supp. 79-5201(b).

Methamphetamine is considered a controlled substance under K.S.A. 2010 Supp. 21-36a01(a). See K.S.A. 65-4107(d).

As we noted in *State v. Gulledge*, 257 Kan. 915, 918, 896 P.2d 378 (1995), "K.S.A. 79-5208 establishes *criminal and civil penalties*. A dealer violating the Act is subject to a *civil penalty* of 100 percent of the tax in addition to payment of the tax itself." (Emphasis added.) K.S.A. 79-5202(a)(1) imposes a tax of $3.50 for each gram of marijuana a dealer possesses. Subsection (a)(4) imposes a tax of $200 for each gram of methamphetamine a dealer possesses. K.S.A. 79-5202(a)(4). The taxes owed under the act "are due and payable immediately upon acquisition or possession [of the drug or drugs at issue] in this state by a dealer." K.S.A. 79-5204(d). Consistent with the civil nature of the taxes and penalties imposed under K.S.A. 79-5202 and K.S.A. 79-5208, the Department of Revenue, not a county or district attorney, is responsible for collecting any money owed under the Kansas Drug Tax Act. See K.S.A. 2010 Supp. 79-5205.

If a dealer pays the taxes on the marijuana or controlled substances in his or her possession, the dealer receives "stamps, labels or other indicia" from the Department of Revenue, indicating that the dealer paid the taxes imposed under K.S.A. 79-5202. See K.S.A. 79-5204(a) and (b). K.S.A. 79-5204(b) states that "[t]he director [of taxation] shall issue the stamps, labels or other indicia in denominations in multiples of $10." Upon acquiring the stamps, a dealer is required to affix the appropriate number of stamps to the marijuana or controlled substances in his or her possession. See K.S.A. 79-5204(c).

Returning to the language of K.S.A. 79-5208, the criminal act that the statute proscribes is a dealer's failure to affix "the appropriate stamps, labels or other indicia" to

marijuana or controlled substances, such as methamphetamine, in his or her possession. When the definition of a dealer is taken into consideration (*i.e.*, a person possessing more than 28 grams of marijuana *or* more than 1 gram of any controlled substance) along with the definition of controlled substance (a term which includes methamphetamine but specifically excludes marijuana), it is clear that possession of more than 28 grams of marijuana without affixing the appropriate number of stamps constitutes one unit of prosecution and possession of more than 1 gram of controlled substances without affixing the appropriate number to stamps constitutes another unit of prosecution. In other words, possession of more than 28 grams of marijuana *and* possession of more than 1 gram of methamphetamine without affixing the appropriate number of stamps to either drug constitutes two violations of K.S.A. 79-5208.

Pribble's only argument on appeal for concluding otherwise is that the legislature, by using the plural terms "stamps, labels or other indicia" rather than singular terms "stamp, label, and indicium" within K.S.A. 79-5208 "expressed its intent that the failure to obtain and affix any number of stamps, labels, or other indicia constitutes only one violation of the statute. That statute explicitly states as much; such an individual is guilty of 'a severity level 10 felony,' *i.e.*, one severity level ten felony."

Pribble is partially correct. The language of K.S.A. 79-5208 does indicate that a dealer's failure to affix any number of "stamps, labels, or indicia" to a *single* drug, regardless of its quantity, results in only one violation of the statute. Therefore, regardless of whether a dealer possesses 29 or 290 grams of marijuana, if the dealer fails to affix the appropriate number of stamps to the marijuana in his or her possession, the dealer has committed only one violation of K.S.A. 79-5208. But as indicated above, if that same dealer also possesses more than 1 gram of a controlled substance (such as methamphetamine) without affixing the appropriate number of stamps to the substance, that dealer can be charged and convicted of two violations of K.S.A. 79-5208.

In this case, while executing a search warrant, law enforcement officers found more than 800 grams of marijuana and more than 14 grams of methamphetamine inside Pribble's home—more than enough to qualify Pribble as a "dealer" of both drugs under K.S.A. 2010 Supp. 79-5201(c). Because he failed to affix tax stamps to either drug, the language of K.S.A. 79-5208 allows for him to be charged, convicted, and sentenced for two violations of the statute, a level 10 felony. Fortunately for Pribble, Steppenwolf's off-grid sentence of—"I'd cut him if he stands, and I'd shoot him if he'd run. Yes I'd kill him with my Bible and my razor and my gun"—was not embraced by our legislature when considering the appropriate sanction for violation of this law. Accordingly, I would affirm the Court of Appeals' determination that Pribble's tax stamp convictions are not multiplicitous and let stand his two convictions for violating K.S.A. 79-5208.